[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, John F. Ashton (husband), and the defendant, Heinke Paulsen Ashton (wife), were married on May 17, 1980 in Greenwich, Connecticut. There are no children issue of the marriage. The husband is 62 years of age. This is his second marriage. His first marriage ended in divorce in October of 1978 and had lasted for 20 years. There are four living children aged 32 to 21 issue of the first marriage. The wife is 51 years old. She has never been married before and has no children.
At the time of the marriage the husband was between careers. In 1976 he had resigned his position as a director and general counsel of Barnes Engineering Company where he had peak earnings of about $45,000.00. At the time of the marriage he was considering starting a new career in either investment management or stock brokerage. For all practical purposes, at the time of the marriage the husband was living on capital as well as gifts and loans from his family. The husband, however, did have assets consisting of investments, a home in Greenwich, Connecticut, and property in Cornwall, Connecticut. The Cornwall property had been in the husband's family since 1942. CT Page 8911
At the time of the marriage the wife was employed as a sales assistant with Shearson Lehman in Greenwich. Her annual salary was approximately $10,000.00, and she brought no substantial assets to the marriage. Prior to the marriage, on May 9th of 1980, the parties entered into a prenuptial agreement. The prenuptial agreement is plaintiff's exhibit A as on file in the court records.
There was substantial dispute between the parties concerning the execution of this agreement. It appears that the husband's version of the circumstances surrounding the execution is more accurate. It appears that on May 1st the husband's attorney, John Roberts, sent a copy of the agreement to the wife's attorney, Jacob Lynch. Some time between that period and May 9th, the agreement was signed. The parties were then married on May 17th. The agreement spelled out in paragraph 11 of the agreement that she has separately and privately consulted with counsel of her own choice and that any questions she had were fully explained by the counsel and that she had independently and carefully read the agreement and was fully satisfied with the same.
The leading case on prenuptial agreements is McHugh v. McHugh, 181 Conn. 482. Counsel have cited other cases that have cited McHugh. The McHugh case was a case wherein the issue of the premarital agreements in Connecticut was first discussed. The case set forth three criteria that had to be met in order to enforce such an agreement at the time of a dissolution of marriage. The criteria, as set forth in McHugh on page 485, are as follows:
1. the contract was validly entered into;
 2. its terms do not violate statute or public policy ; and,
 3. the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice.
It appears that there is really no dispute as to the second criteria of the question of violation of statute or public policy so the court finds that that provision has been complied with. The question of whether or not the contract was validly entered into is discussed in McHugh and indicates that if any waiver of statutory or common-law rights were made were they made voluntarily and knowingly. The wife had counsel at CT Page 8912 the time, and paragraph eleven clearly shows she understood this part of the test. It is also clear that the duty is on the part of each party to disclose the amount, character and value of individually owned property. This is an indispensable and essential prerequisite to a valid antenuptial agreement. (See McHugh, page 486.) It indicates the burden is not on either party to inquire but on each to inform. Full disclosure requires disclosure of the amount, character and value of the parties' respective assets so that one can ensure an intelligent waiver of the statutory rights involved.
Although the language in paragraph one on page one of exhibit A seems to create some ambiguity concerning the amount, a reasonable interpretation of the words "upper middle six figures" is in the range of $600,000.00 to $800,000.00. In fact the husband's testimony was that his assets were in the range of approximately $690,000.00. The court, therefore, finds that, although if he were the lawyer for the wife in the case he would have changed that amount to a more specific amount, the court is satisfied that there was full disclosure on the asset side of the ledger. The problem with the disclosure is, however, that there was not adequate disclosure concerning income in the agreement.
The agreement provides in paragraph 15 that it is the entire agreement and there are no oral representations or promises outside of the agreement to bind the parties. In paragraph 4B it says that the husband has the right to keep all of his ". . .real and personal property of every nature which he now owns or which may be held in his name or which he may hereafter acquire or inherit. . . ." In paragraph 7, the wife agreed to take "alimony of $500.00 per month for the number of calendar months during which the parties were . . . married prior to . . . separation but in no event for a period exceeding ten years from the date payments of alimony commence . . ." under the agreement. There was not adequate financial disclosure in the agreement concerning his earnings at the time the agreement was entered into.
It is also clear that it was contemplated in the agreement that the wife was ". . . presently employed, has always worked and intends to continue to do so." It is clear that the wife stopped working shortly after the marriage, and for the bulk of the marriage, did not work. It is disputed as to what the cause of this situation was, but what is clear is that the husband allowed it to exist.
It is also clear during the course of the marriage that the husband, during the early years of the marriage, earned very minimal amounts of money as earned income (being income CT Page 8913 from his work). From 1980 to approximately 1983, the husband had average earned income of only $725.00 per year. From 1984 to 1987, the husband having commenced a new career as an investment advisor, had an average earned income of approximately $18,000.00 per year. In 1988 his earned income rose to $67,900.00 increasing to $132,538.00 in 1990. The husband testified that he anticipates he will have about the same income in 1991.
Although the husband argues that the provisions of the premarital agreement are severable, he has cited no Connecticut authority for that proposition. The agreement itself, exhibit A, is silent as to that provision, and accordingly, it is construed against the maker who was the husband. It is this court's opinion that the alimony and property division sections are so entertwined as to make an agreement fair and enforceable only if there is full disclosure on both areas. If there was not full disclosure of the income situation, how can one contemplate an arbitrary number of $500.00 per month as fair and reasonable and enforceable?
The husband's total cash value of all assets as shown on his financial affidavit of August 21, 1991 is $3,263,680.62. This is approximately five times what the assets were at the time the agreement was entered into in 1980. The McHugh court said at page 489
 Likewise, where the economic status of parties has changed dramatically between the date of the agreement and the dissolution, literal enforcement of the agreement may work injustice.
The court finds that the third prong of the McHugh test has not been met in this case. The court finds that the three criteria necessary for enforcement are not met, and the agreement is declared unenforceable because of the lack of full disclosure concerning the earnings and the literal enforcement of the agreement would work injustice. This court finds that the circumstances of the parties at the time of the dissolution are so far beyond the contemplation of the parties at the time the agreement was made as to make enforcement of the agreement work an injustice.
The court having listened to the parties and all of their evidence and having reviewed all of the exhibits and their financial statements and having considered the statutory criteria under 46b-81 and 46b-82 of the Connecticut General Statutes, the court orders as follows: CT Page 8914
1. The dissolution of the marriage on the grounds of irretrievable breakdown is granted.
2. The property known as 16 Bermuda Road, Westport, was purchased during the marriage by the husband in his name for $325,000.00 in 1982. All of the funding for that purchase came from his own assets or he arranged the financing. The property is presently worth $910,000.00 which is the stipulated value of the property. There is equity based on an existing mortgage of $750,000.00. The value of the property has increased $585,000.00 without anything substantial being done to the premises.
The husband shall keep this property free and clear of the wife's interest and he shall hold her harmless on all mortgages and other liabilities connected with said premises. The wife may continue to occupy said premises until the happenings set forth in paragraph three below.
3. The husband shall pay to the wife as a lump sum property distribution the sum of $300,000.00 within thirty (30) days of the date of this decree. The wife shall vacate the premises at 16 Bermuda Road, Westport, within ten (10) days after the payment of said sum but not sooner than thirty (30) days after this decree unless she so chooses.
4. As to personal property, all of the personal property and furniture given to the parties by the husband's family shall belong to the husband. They are, among others, the property of Estelle A. Craig and his mother and father. The furniture brought to the marriage by the husband shall be his property, and the furniture brought to the marriage by the wife shall be her property. All property bought during the course of the marriage shall be divided equally between the parties. If they are unable to agree as to how the property should be divided, then it shall be referred to the Family Relations officer for mediation. In the event they are not able to resolve their dispute with mediation at Family Relations, all of the property bought during the marriage is ordered sold and the proceeds divided equally between the parties. All property received by the wife from her friends and relatives shall be the wife's, and all property she made shall be hers. All property received by the husband from his friends or relatives shall be the husband's. The wife shall have her choice of the motor vehicles (one of the 1980 Cadillacs) for her ownership, and the husband shall transfer that motor vehicle to her within twenty-one (21) days of the date of this decree. CT Page 8915
All of the property mentioned above is only the property in the Bermuda Road house. All of the contents of any other property shall be the husband's. The husband shall maintain and keep the Endeavor sailboat and Black Fin power boat. All of the assets listed by the wife on her affidavit under "Bank Accounts, Pension and All Other Assets" are to remain her sole and exclusive property, and all of the assets of the husband listed under "Savings and Checking and Stocks and Bonds" shall remain his sole and exclusive property along with the property listed under "All Other Assets" on the husband's affidavit.
5. The liabilities shown by the parties on their respective affidavits shall be their sole and exclusive liabilities.
6. The plaintiff shall pay to the defendant alimony of $32,000.00 per annum payable in equal monthly payments beginning thirty (30) days from the date of this decree and continuing until: (a) the death of either of the parties; (b) the wife's remarriage or her cohabitation under the Connecticut General Statutes; or, (c) ten (10) years from the date of the dissolution, whichever event first occurs.
7. The plaintiff shall continue to cover the defendant with medical and dental insurance so long as he is able to cover expense, but said coverage not to be beyond one year from the date of this decree.
8. The husband shall make a contribution to the wife's counsel fees and costs in the sum of $25,000.00 to be paid within six (6) months of the date of this decree.
9. In order to give the wife incentive to return to work the court orders that the husband may not seek modification based on the material change in circumstances in the wife's earning until the wife earns in excess of $20,000.00 per year.
EDWARD R. KARAZIN, JUDGE.