[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 56 year old plaintiff husband is a dealer in antiques and in a second business as a dealer in antique materials. He is a prominent authority in colonial American antiques with a specialty in identifying antique furniture pieces from the Woodbury area. He has also engaged in real estate development from time to time.
The 47 year old defendant wife first met the plaintiff in 1974. They continued to see each other socially until 1979 when the defendant moved into the plaintiff's house at his invitation. She brought her son, Kenneth, who was then 9 years old with her. The plaintiff testified that the defendant and her son did not move in until later in 1983 or 1984 but the court accepts the defendant's version of the event. CT Page 10079
Prior to taking residence with the plaintiff, the defendant had been self sufficient. She had worked as a seamstress and had developed a specialty of preparing theatrical costumes for broadway shows and for several national ballet companies. The plaintiff described the defendant as being a "wonderful seamstress". She resigned from the theatrical costume business since it entailed too much traveling. She had become supervisor of the costume makers prior to her resignation, after which she returned to private dressmaking and part time waitressing. After moving in with the plaintiff, the defendant also resumed housecleaning three mornings weekly in lieu of waitressing. It is conceded by both parties that the defendant stopped working outside the plaintiff's home at his request.
The parties discussed marriage plans for about two years prior to their marriage but it was not until two weeks prior to the marriage that the plaintiff formally proposed to the defendant that they marry. One week prior to the scheduled marriage date the plaintiff first spoke of having a pre-nuptial agreement between them. The plaintiff called and spoke to Attorney Peter Clark who is a partner in the Woodbury office of Sturges and Mathes. The lawyer prepared a draft of the agreement that was eventually executed by both parties. (Plaintiff's Exhibit A)
The first and only time the defendant was presented with this agreement was in the attorney's office at the time she was requested to sign it, on August 9, 1985 which was the day preceding the parties' planned wedding. Attorney Clark acknowledged in his testimony that the defendant had no comments nor did she express any concerns regarding this proposed agreement. No list of assets for either party was attached to the agreement and the plaintiff now claims that the defendant's familiarity with his businesses is a sufficient alternative to the formal disclosure by schedules. Ante-nuptial agreements were approved in Connecticut when the court considered one in McHugh v. McHugh, 181 Conn. 482 (1980). Such agreements are generally enforceable where three conditions are satisfied: (1) The contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work in justice. Id, pg. 485-486. A valid waiver of rights that ripen upon a marriage must be based upon complete awareness of the right being waived. The CT Page 10080 party seeking the waiver from the other party is obliged to disclose the amount, character and value of individually owned property unless it can be established that the other party's independent knowledge of the same is sufficient to justify an omission of such disclosure. The plaintiff in this case now takes the position that the defendant's independent knowledge of his assets and financial situation was sufficient to allow the elimination of a formal disclosure by him. Since the parties are not ordinarily dealing at arms length under such conditions, it is not incumbent upon the party to inquire but rather incumbent upon the party seeking the waiver to make full disclosure in lieu of independent knowledge. The present agreement is impaired by the fact that the defendant was not afforded sufficient time to consider the agreement nor was she afforded sufficient opportunity to obtain independent legal counsel of her own chosing before executing the agreement. There was no proof that the defendant had any expertise in dealing with antiques nor did she have any understanding of how particular antique pieces are examined or evaluated in order to determine their present market value. At best, it can be said that she had the benefit of price tags that were hung on various articles in the plaintiff's home collection and in his shop but to say that the defendant knowingly waived her marital rights less than 24 hours before being married and with full knowledge of what she was doing cannot be concluded in this case.
As an example of the quality of the furniture in his private collection, the plaintiff sold a high boy three years ago for $200,000. On cross examination, the plaintiff admitted the defendant would not know the quality, value or market value of a particular antique since she lacked the expertise that the plaintiff possessed after many years of study and dealing in the market.
The agreement that the defendant and his counsel designed was of such nature that it was really a spendthrift trust that could be funded at the plaintiff's option or discretion with a trustee named of plaintiff's choosing who could then pay over to the defendant such money as in the trustee's opinion was necessary. The agreement, in other words, totally removed from the defendant and attempted to remove from the court having jurisdiction of the dissolution the ability to see that equity was done to both parties in this case. The court concludes that it would be inequitable to enforce the ante-nuptial agreement that was presented to the defendant on August 9, 1985. CT Page 10081
The plaintiff testified at some length and in considerable detail regarding the defendant's drinking habits regarding the consumption of alcohol both prior to their marriage and also after their marriage. The plaintiff said that the defendant had drinking bouts and that affected her ability to function. These events occurred prior to the marriage. When the marriage was over and the plaintiff was contemplating this dissolution action, he took pictures of empty wine bottles and other evidence that he gathered to establish that this contributed to the breakdown of the marriage. Since the defendant never hid her drinking problem nor did she ever conduct herself differently after the marriage than she did prior to the marriage, the plaintiff would appear to have entered into this marriage with full knowledge of the problem that the defendant was carrying into the marriage.
The plaintiff testified that from 1983 through 1986 his daughter and son-in-law ran his businesses and, for the first time in his life, he was able to stop working 18 hours daily. This enabled the plaintiff and the defendant to spend time together. During this time together, the plaintiff testified that he explained to the defendant his real estate holdings, his plans for future real estate investment, and the method in which he bought and sold antiques with the markup that he would make on each piece. He also testified that he told the defendant on many occasions that his networth was between three million to three million five hundred thousand dollars. Despite this, he failed to present any inventory in writing nor was any schedule attached to the ante-nuptial agreement. The defendant had no way to independently examine these claims nor did she have the opportunity to consult independent counsel prior to signing this ante-nuptial agreement.
The plaintiff would retire from business during the months of October, November and December to devote to hunting. With the game that he was able to obtain during these hunting trips, he stocked his freezer and was able to provide food for the table during the balance of each year. In addition to these hunting trips after the marriage, the plaintiff and defendant vacationed in Rhode Island in 1986, in Montana during 1987, Vermont and Montana during 1988 and in 1989 visited Vermont and took a 23 day hunting trip to Africa.
In the plaintiff's view, the marriage began to break down during 1989 and 1990 when he testified the defendant began to CT Page 10082 escalate her drinking of alcoholic beverages and the defendant's emotions became particularly disturbed during the holidays in December when her children from her earlier marriage would visit.
The plaintiff testified at some length and in great detail regarding the discrepancies in his checkbook concerning $50 or $100 being taken by the defendant by changing the amount on a check for household expenses. Since most of these discrepancies came to light after the plaintiff had an audit which was after the defendant left the marriage and the marriage had already broken down, it is difficult for the court to see how these after discovered matters pertained to the breakdown.
The plaintiff prepared an inventory of "premarital assets", "post-marital assets" and broke the items down into shop inventory and also indicated whether the item was acquired prior to this marriage or after this marriage. Again, in evaluating the quality of the antique pieces that the plaintiff owns, the court notes a tall case clock is listed for $27,000 and a Chippendale drop-leaf table for $25,000.
The defendant has been an independent lady as discussed above and has also completed two years of formal college education, which would indicate considerably more formal education than the plaintiff was able to obtain before he was obliged to begin working. The defendant maintained the family home, traveled with the plaintiff to at least three antique shows yearly where he would display his wares, assisted him at the demolition and also the renovation of his real estate projects involving antique homes in the Woodbury area and traveled with him during their annual vacations. The hospitalization that the defendant had in 1989 was caused by what appeared to be a stroke but which later cleared up after a few days without a diagnosis. In 1989 she also had a problem with her left ovary which was treated with radiation and then the problem subsided. She testified that the problem has again occurred and is presently troubling her. In 1987 she was admitted to Waterbury Hospital for an allergy reaction to shell fish. The plaintiff's attempts to indicate that her hospitalization and health problems were due to excessive drinking is not accepted by the court.
The plaintiff's appearance on the witness stand has led the court to conclude that he is a gentleman of strong opinions, a strong personality having great self-confidence and great independence and a gentleman who has built an excellent reputation CT Page 10083 as an outstanding antique dealer. The court's observation of the defendant on the witness stand has led the court to conclude that the defendant is a mild, retiring individual who would never force a confrontation with the plaintiff. The court has inferred that this would explain why she chose to change the amounts on various checks since the plaintiff had been giving her a budget of $100 weekly since 1979 and had made no adjustment in that amount despite several requests from her.
The court believes it is unnecessary to discuss in detail the other events that occurred during this marriage. Suffice it to say that it was a marriage that appeared to have been viable for five years from 1985 through 1990. The court is unable to allocate responsibility for the causes of the breakdown unequally and will take this element into consideration in applying the other statutory criteria to the judgment that is to be entered in this case. After reviewing all the evidence and in light of the statutory criteria, the court enters the following judgment.
1. The judgment may enter on the cross complaint dissolving the marriage of these parties on the ground of irretrievable breakdown. Having utilized the cross complaint for entry of judgment, the court dismisses the plaintiff's complaint as amended as moot.
2. The plaintiff is ordered to pay to the defendant the sum of $200 weekly as periodic alimony for period of 5 years, to terminate earlier upon the defendant's remarriage or death. A wage withholding is ordered as required by applicable statute to secure this order. The term is non-modifiable.
3. The plaintiff shall retain the eight (8) items of real estate as listed on his affidavit dated July 15, 1992.
4. The plaintiff shall retain his personal antique collection that he keeps at his home.
5. The business known as Harold E. Cole Antiques and the business under the trade name Ramese shall remain the sole property of the plaintiff.
6. The plaintiff shall retain the real estate parcels listed as #1, #2, and #4 on his Schedule B attached to his financial affidavit of July 15, 1992.
CT Page 10084 7. The property known as the "Red House" located on Main Street North, Woodbury, Connecticut is awarded to the defendant. The plaintiff shall pay to the defendant the sum of $30,000 on or before March 1, 1993 which fund will assist the defendant in finishing the premises. The defendant may elect to market the premises as is but the cash payment shall be due in any event. The plaintiff shall arrange to release any equity access mortgage lien that he has previously placed on this property so that the title may be transferred to the defendant free and clear of any liens and subject to only current taxes.
8. The plaintiff shall be solely responsible for all the liabilities listed on his financial affidavit and he shall be solely responsible for any tax assessments that may result from the joint tax returns filed by the parties during the years of their marriage and he shall save the defendant harmless and indemnified.
9. The plaintiff is ordered to pay the sum of $12,000 to the defendant as an allowance to defend his action for dissolution and to allow her to defray her legal expenses for the prosecution of her cross complaint. The sum shall be payable in two equal payments, with the first installment due on or before the last day of December, 1992 and the balance due on or before April 1, 1993.
10. The parties shall otherwise continue to own as their respective sole property all other assets presently in their individual possession. The attorney for the defendant shall prepare the judgment file.
HARRIGAN, J.