[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on April 1, 1974 in Huntington, England. The plaintiff has resided continuously in the state of Connecticut for more than five years. They have three children, issue of the marriage, one of whom is a minor, Derya, who was born on February 26, 1979.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has carefully considered criteria set forth in Connecticut General Statutes sections 46b-56,46b-62, 46b-81, 46b-82, 46b-84 and 46b-86 (b) in reaching the decisions reflected in the orders that follow.
The court has also weighed the holding of the appellate court on O'Neill v. O'Neill, 13 Conn. App. 300, 311, cert. denied, 207 Conn. 806, (1988) wherein the court said as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which, enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Blake v. Blake, 207 Conn. 217, 230-31 (1988)
The history of the parties' lives together met its discussion.
The parties met in 1972. Subsequently, the plaintiff followed the defendant to Zambia where she persuaded him to father a child. She promised she would leave and make no demands upon him once CT Page 1408 she were pregnant. She then reneged on her promise and demanded to remain with the plaintiff. When he did not agree with her plan, she attempted suicide. Once the child, a daughter, Julia, was born on April 13, 1973, the defendant became attached to the baby and married the plaintiff.
Although the parties had two more children, the defendant became increasingly unhappy. In Paris in 1986, he left the family. Anticipating a posting to Norway and then Vietnam, he told the plaintiff she and the children would not be accompanying him. After some discussion the family decided to return to their Old Greenwich home at 40 Edgewater Drive where they had lived from 1977 to 1984. This home had been purchased by Mr. Rose. During this period in Paris the defendant tried to commit suicide twice.
Since his family's removal to the United States the defendant has lived with another woman by whom he has a daughter, Sunniva, and resides with them in his present post in Algeria.
The fact that the defendant withheld mortgage and support payments rather than his abandonment or infidelity was the catalyst that caused the plaintiff to institute this action. After the parties separated in France, the defendant brought a dissolution action in Norway. The plaintiff successfully appealed and overturned the divorce and financial orders. The defendant then tried to persuade the plaintiff to initiate proceedings here. When she did not, he forced the issue by withholding sums of money. The plaintiff then filed this action.
At the time of trial the plaintiff wife was 49 years old and the defendant husband 50 years old. The plaintiff's health is good but she suffers from asthma and takes medication. In addition she has suffered bouts of depression. The defendant's health is good.
The plaintiff was born in Istanbul, Turkey and is of Armenian descent. She studied pharmacy at the University of Paris for three years but did not complete degree requirements. She had no outside employment during the marriage nor any specialized training. Aside from her ability to speak French and Turkish, she has no marketable skills. In addition, she is not a United States citizen. Her present visa status is uncertain and she has no work permit. She believes she can improve her position when her daughter, Julia, becomes a naturalized citizen at some future date. She failed to utilize a brief period of time after returning to Connecticut in which she could have obtained a work permit through her husband's affiliations. She CT Page 1409 made a limited and unsuccessful effort to locate work through the United Nations as an interpreter or translator. She did not know the requirements for these positions. She stated that she could not work in the Turkish consulate as no Armenian can be a civil servant. She has made little effort to obtain training or locate other types of positions. She has obtained part-time employment teaching French in the Greenwich public schools and she has done some baby-sitting. In addition, she refuses to drive on highways, thereby narrowing her employment prospects.
The plaintiff entered the marriage with little or no assets. She has since inherited an apartment building in Istanbul which has a fair market value of $15,000. At the time of trial she derived rental income from an apartment in the amount of $105 per month from a tenant who also maintained the property. He was moving in January, 1994.
In the orders which follow the court has attempted to provide for the plaintiff; at 49 she is without job skills and work permit, and her status in this country is uncertain and the court does not expect that she will be gainfully employed on a full-time basis in the near future, if at all.
The defendant is a native of Norway. He was trained as an economist at the University of Leeds in England and received an MBA at Harvard. Since 1972 he has worked for the United Nations and in the course of his employment has been posted to different countries. He is presently residing in Algeria.
His base gross salary is $8,734.16 per month. He also receives various "adjustments" to his salary. In 1993, he received a post adjustment of $2196.96 per month which reflects cost of living conditions at his particular post. He received a monthly dependency allowance of $423.33 and health and dental insurance subsidies of $297.38. A representation allowance of $241.67 monthly defrayed the cost of official entertainment. Deductions include health and dental insurance premiums, life insurance premiums, and a pension contribution. The latter is $731.94 per month. In 1993, therefore, the defendant received a gross salary of approximately $11,890 per month or $142,680 for the year. Furthermore, he receives a variable educational grant in addition to his salary. In 1993 the grant was $14,652.86. He also received an education travel grant in the amount of $1700. These grants are given to assist in meeting the cost of schooling an expatriated employee's child. In addition there is a mobility and hardship allowance which compensates for the CT Page 1410 difficulty of living conditions in a post. In 1993, the defendant received $16,446. When he is reassigned he receives an assignment grant. In 1991 that grant was in excess of $11,000.
The defendant jointly owns two pieces of property in Norway with his brother which he brought to the marriage. His interests total nearly $300,000. The Baerum property is subject to Norwegian law under which it passes to his eldest son, in this case Kenya, who is not a child of the marriage. He derives net income of at least $260 per month.
The property in Old Greenwich is in the defendant's sole name. He purchased it for $119,500 and it is now worth approximately $350,000 although it needs repair. In August 1987, when the plaintiff and children returned to Greenwich, the defendant took out a mortgage of $300,000. In addition to paying closing costs, he paid off three mortgages which totalled approximately $100,000. He gave $13,000 to the plaintiff to move and spent approximately $15,000 for a new roof and other maintenance items. He retained $158,000. He later gave his companion, the mother of Sunniva, approximately $90,000. He claims the remainder was spent on normal living expenses, including support for his family in Connecticut. Some of his bank statements for the period of time involved are missing. His explanation of his use of the balance of the money was not convincing.
Today, the balance of the mortgage on the Old Greenwich property is $285,000 and the mortgage payment exceeds $2000 per month.
In addition, the defendant has control of funds left by his uncle to educate his children. The defendant pays various bills from these funds and corresponds directly with the children about their money. For instance, he has advanced money to Julia at college, and has paid tuition for Paul, the second child, at Storm King School and he has paid for Derya's tennis expenses.
The defendant, at 50, can look forward to several more years of productive work. He also has the financial security of his holdings in Norway. He has a pension and it is anticipated that he will be able to acquire assets in the future, especially as his financial responsibilities to his children diminish.
The defendant urges that, in dividing the property, the court enforce an antenuptial agreement made in England and drafted by a CT Page 1411 Norwegian attorney. The defendant offered no competent evidence or legal brief that provided the court with the requirements for a valid agreement in Norway. Therefore, the court cannot find that the agreement is valid and is not bound by it.
However, even if the court were to find it a valid agreement in Norway, the court cannot find it valid in Connecticut. The validity of an antenuptial contract depends upon the circumstances of the particular case. Mc Hugh v. McHugh, 181 Conn. 482, 485. As a type of contract it must comply with ordinary principles of contract law. The court must determine whether or not there was a knowing and voluntary waiver of statutory or common-law rights and whether or not the parties disclosed the amount, character and value of individually owned property absent the other's independent knowledge of the same. Id. at 486.
In the instant case the contract was drafted by a Norwegian attorney and prepared in English. The plaintiff was unrepresented by counsel and had not seen the agreement before its execution. English is not her native tongue and she claims not to have known the meaning of the word "estate." Even if she did know its meaning, there is still no evidence that the defendant fully informed her as to the amount, character and value of the property in Norway or that she had any understanding of what her rights might be under Norwegian law. Accordingly, the court cannot find that her waiver of rights was knowing and voluntary. The court cannot find that the agreement was fair and equitable and therefore the court cannot order its enforcement.
While the objective facts tend to cast the defendant in a very bad light, the court finds that he is not totally at fault for the breakdown of the marriage. The court finds that the plaintiff is a woman determined to have her own way regardless of the ramifications to others. The parties' differences in personalities, values, and sensitivities caused problems which led to the irretrievable breakdown of the marriage. Both parties are responsible for its deterioration. Judgment may enter dissolving the marriage on the ground of irretrievable breakdown.
Accordingly, the following orders shall enter:
A. Custody
1. The parties shall share joint legal custody of the minor child, Derya. His primary residence shall be with the CT Page 1412 plaintiff. The defendant shall have reasonable and liberal rights of visitation.
2. The defendant shall pay all the costs of the child's travel in connection with the exercise of his visitation rights.
B. Alimony and Child Support
1. The defendant shall pay the plaintiff the sum of $5000 per month as unallocated alimony and child support until June 30, 1997.
2. The defendant shall pay all costs of transportation and incidental expenses incurred in connection with Derya's tennis activities. He shall not be responsible for any costs incurred by the plaintiff in connection with Derya's tennis activities.
3. As of July 1, 1997, the defendant shall pay to the plaintiff as alimony, the sum of $4000 per month until the earliest to occur of the following events: his death, her death, her remarriage, or her cohabitation pursuant to statute. The defendant's retirement may be a basis for modification.
4. A contingent wage withholding order may enter.
C. Division of Marital Assets
1. The defendant shall quit claim his interest in the property located at 40 Edgewater Road, Old Greenwich, Connecticut to the plaintiff. She shall be responsible for paying the mortgage, taxes and insurance and all other costs connected with the property. She shall hold the defendant harmless from any and all liability thereon.
2. The defendant shall pay to the wife as a division of marital assets the sum of $175,000 in five annual installments of $35,000 each. The first payment shall be made on July 1, 1995 and the remaining payments shall be made on July 1 of each succeeding year through July 1, 1998. In the event of the defendant's death before payments are fully made, the balance remaining shall be a charge against the defendant's estate.
3. The defendant shall retain his real property in Norway free and clear of any claim of the plaintiff. CT Page 1413
4. The plaintiff shall retain her real property in Istanbul, Turkey free and clear of any claim of the defendant.
5. The defendant shall transfer $100,000 of his retirement funds to the plaintiff.
6. The defendant shall retain all other assets listed on his financial affidavit dated November 19, 1993 free and clear of any claim of the plaintiff.
7. The plaintiff shall retain the assets listed on her financial affidavit free and clear of any claim of the defendant.
D. Insurance
1. The defendant shall maintain medical and dental insurance for the benefit of the minor child until he attains the age of 18.
2. The parties shall share equally in the unreimbursed medical, dental, orthodontal, psychological, and psychiatric expenses of the minor child.
E. Life Insurance
1. The defendant shall maintain life insurance in the amount of $130,000, his present policy, for the benefit of the plaintiff and minor child until his obligation to support them ceases.
F. Liabilities
1. Each party shall pay the debts listed on his/her own financial affidavit and hold the other party harmless and indemnified thereon.
G. Counsel Fees and Expert Fees
1. The defendant shall pay $15,000 toward the plaintiff's counsel fees and expert fees.
H. Miscellaneous
1. The plaintiff shall not contact the defendant through employer or any third parties to harass, annoy or embarrass the defendant. CT Page 1414
All other claims for relief not expressly addressed herein have been rejected.
Judgment may enter accordingly.
The court commends both attorneys on their presentation of the case. Their focus on relevant issues and development of the evidence aided the court.
Leheny, J.