[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff commenced this action seeking a dissolution of marriage of the parties. Thereafter, with the court's permission, the plaintiff amended her complaint adding a second count alleging unjust enrichment and a third count claiming fraud by the defendant. The defendant filed an answer and cross-complaint requesting a dissolution of the marriage and seeking enforcement of the prenuptial agreement executed by the parties. The plaintiff's answer and special defenses to the cross complaint include the same allegations set forth in the second and third counts of her complaint.
One thing the parties agree upon is that their marriage has failed and should end. They intermarried on November 27, 1991 at Weston, Connecticut. The plaintiff has resided continuously in this state since 1991. There are no children issue of this union. The evidence revealed that the marriage has irretrievably broken down. Judgement may enter dissolving the marriage on that ground.
This was a second marriage for both parties. The plaintiff is 67 years of age and the defendant is 69 years old. Although the defendant reported some health problems, they appear not to be disabling and the defendant presented himself as a robust and articulate gentleman. The plaintiff disclosed no health problems. CT Page 3287 Each party owned substantial assets at the time of their marriage. A prenuptial agreement was entered into by them. The validity and interpretation of that agreement have been the central issues of dispute before the court.
This was a short and stormy marriage. Although each was looking for a companion to share the benefits available for senior citizens to enjoy, that goal was not achieved. The differences in backgrounds, personalities, interests and value systems of the parties apparently prevented them from making their relationship work. Each party must bear some degree of responsibility for the failure of this marriage.
 I. PRENUPTIAL AGREEMENT
The threshold issue presented is the validity of the prenuptial agreement entered into between the parties. They executed a written agreement on the day of their marriage. The agreement set forth the terms that would govern the parties' respective financial rights and obligations upon the termination of the marriage whether by death or by dissolution. It also allocated certain support obligations and other financial obligations during the course of the marriage.
In this jurisdiction, a prenuptial agreement is not entitled to automatic recognition or enforcement in a dissolution proceeding. The Connecticut Supreme Court in McHugh v. McHugh,181 Conn. 482 (1980), has set forth a three pronged test for determining the validity and enforceability of such agreements, as follows:
Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice.
The plaintiff maintains that the agreement was not validly entered into. She claims that she executed the agreement under CT Page 3288 duress and also her decision to enter into the agreement was not made voluntarily and knowingly because of the defendant' failure to disclose his true feelings about the relationship.
Approximately one and one-half years before the parties married, the defendant advised the plaintiff of his desire that a prenuptial agreement be prepared. The plaintiff agreed and her attorney with participation by the defendant's counsel prepared the contract. Nothing further was done until the day before the wedding date when the defendant again advised the plaintiff he wanted the agreement executed. The defendant complied on the day of the wedding. They signed, without any changes, the agreement that had been prepared several months previously.
The plaintiff posits that she signed the agreement under duress because the wedding was planned and would not have proceeded unless she signed the agreement.
Under the circumstances that preceded the signing of the prenuptial agreement, the court must reject the plaintiff's claim of duress. She was made aware more than one year prior to marriage of the defendant's requirement that an agreement was necessary. The plaintiff accepted this and had her counsel prepare the agreement, and she had the opportunity to consider the consequences and get the benefit of advice from her relatives. When she agreed to marry the defendant she was well aware of the ground rules. The agreement she signed was no different than the one she had previously agreed to.
The plaintiff further complains that the defendant's failure to disclose to her his opinion that their marriage relationship would fail and was a "long shot" to succeed was not revealed to her prior to the marriage and thus prevented her from making a voluntary and intelligent waiver of her rights when she signed the agreement.
The plaintiff has failed to persuade the court that the defendant entertained any ulterior motive when he married the plaintiff. The court accepts the defendant's testimony that he loved the plaintiff and wanted to spend the rest of his life with her. It would not be unusual for the defendant to have certain reservations before marriage. He was no youngster, had been previously married for forty two years and reasonably could have been apprehensive about being compatible with a new partner. CT Page 3289
Also, it must be noted that the plaintiff was a mature woman who had prior experiences in relationships. She was no wide eyed innocent young lady when she decided to marry the defendant. The court finds it difficult to believe that the plaintiff did not have some concerns and reservations before the wedding. She made the same decision the defendant did: Take the risk and work at it. The bottom line is the plaintiff knew the risks and made her own decision knowingly, voluntarily and intelligently.
The plaintiff further claims the agreement does not meet the requirements with respect to a full and fair financial disclosure. Attached to the prenuptial agreement are financial statements of the parties. The defendant's statement was dated May 13, 1990, approximately eighteen months prior to the date on which the document was signed. The defendant signed the bottom of the document on the date it was executed and declared there had been no material changes in his financial condition.
The plaintiff has failed to demonstrate any significant and material changes in the defendant's financial condition between May 13, 1990 and November 27, 1991. The court finds that the defendant made a full and fair disclosure of his finances to the plaintiff at the time the agreement was executed.
The court concludes that the prenuptial contract was validly entered into.
The second prong of the McHugh test requires that the terms of the agreement do not violate statute or public policy. The plaintiff has made no claim that the subject agreement conflicts with this requirement. A review of the contract convinces this court that its terms offends no statute or public policy of this state.
The third prong of the McHugh test deals with a comparison of the circumstances of the parties at the time of dissolution with the time the contract was entered into to determine if enforcement of the contract would work an injustice. This prong has been more concisely stated in the Connecticut Premarital Agreement Act, which became effective October, 1995 and does not apply to the subject agreement. That act states the agreement shall not be enforceable if the "agreement was unconscionable when it was executed or when enforcement is sought".
This requirement of fairness has given the court some concern. CT Page 3290 Under all the circumstances of this case, the court has concluded it would be unfair to enforce the terms of the premarital agreement.
The parties resided in a home that the defendant owned prior to the marriage. The plaintiff, in 1992, proposed that they perform major renovations and improvements to the home. The defendant agreed and under the direction of the plaintiff the work was performed. The plaintiff contributed a substantial amount of her own funds for the project and devoted her time, efforts and significant talents to the work that consumed approximately one year to complete. The results, as demonstrated by the photographs presented as evidence, was an attractive and completely refurbished home. A further result of this work was the increase in the value of the home. Before the work was performed, when the defendant attempted to sell the property, the only offer received was $450,000. At the time of trial, the defendant valued the property at $650,000.
Before the plaintiff started the project, the parties agreed that the defendant would contribute $50,000 and the plaintiff would pay the balance. Further, their prenuptial agreement provided the plaintiff would be reimbursed for the use of her own funds expended only for capital improvements to the defendant's property. That term, however, was not defined in the agreement.
The plaintiff cannot deny that she was aware in advance of her financial obligations concerning the work on the residence. She elected to go forward with the project. The court accepts as credible the plaintiff's explanation that she was willing to spend the money because she was anticipating a long marriage with the defendant and they both could enjoy the benefits of a beautiful and comfortable home.
The net result of the breakup of this marriage, shortly after the remodeling work, is the plaintiff stands to lose substantial funds while the defendant will enjoy the benefits of her labors. In addition, due to her age, the plaintiff will be less able to replace those funds expended by her. It is unfair for the plaintiff not to share to some degree in the value of the improvement of the defendant's assets which she helped to create.
In addition to the benefits of the work performed on the defendant's residence, there is another reason why enforcement of the agreement would be unfair. At the time of marriage, both CT Page 3291 parties had equal net worths. At the time of dissolution, the defendant's net worth has appreciated by $600,000, an increase of approximately 40% from the date of marriage. The plaintiff's net worth has remained about the same. Any increases in her capital were utilized to enhance the estate of the defendant.
Under the circumstances, the court concludes it would be unconscionable to enforce the prenuptial agreement and declines to do so.
Judgment may enter for the plaintiff on the defendant's cross-complaint.
 II.
The court has carefully considered the statutory criteria set forth in Connecticut General Statutes, Sections 46b-81, 46b-82 and46b-62 in reaching the decisions reflected in the orders that follow.
A significant consideration was the plaintiff's contributions to the acquisition, preservation and appreciation in value of the defendant's estate.
The following orders may enter.
1. Neither party shall be obligated to pay periodic alimony to the other.
2. The assets of each party shall remain her and his separate property.
3. The defendant shall pay to the plaintiff as an assignment of property the sum of two hundred thousand ($200,000) dollars.
4. Each party shall be responsible for her and his own debts, including attorney's fees.
5. When the plaintiff vacates the residence of the defendant, she may take with her all the items of personal property listed on Exhibit #8 except for the defendant's furniture and the mattresses. The plaintiff may remove her furniture which she reupholstered, her own other furniture, the speakers that are not built into the walls, and the slipcovers. The plaintiff shall not remove the mattresses, any of the defendant's furniture, drapes, blinds, and CT Page 3292 shades, those being replacement items.
In case of any disputes involving the division of the furniture and other items listed on Exhibit #8 or involving ownership of other items of furniture, furnishing or personal effects not included in that exhibit, the court reserves jurisdiction to issue further orders. Upon request, it will do so after a further hearing or after submission of briefs if by agreement of the parties.
6. The plaintiff shall vacate the marital residence no later than June 30, 1996. Until she vacates, the plaintiff shall retain exclusive possession of the residence. The plaintiff shall continue to pay the telephone bills and the defendant shall pay the same expenses he has been currently paying.
7. The defendant shall cooperate in obtaining the documents or information necessary to permit the plaintiff to exercise her rights under federal law to continue medical coverage under the defendant's medical plan for the maximum period permissible. The payment of premiums shall be the responsibility of the plaintiff.
8. The plaintiff's former name of Gladstone is ordered restored.
 III. UNJUST ENRICHMENT
The court has found the prenuptial agreement of the parties should not be enforced for reasons previously stated. The court, therefore, applied the applicable statutory criteria to reach its decision stated in the orders incident to the dissolution of the marriage of the parties. The court has fully considered the benefits bestowed on the defendant by the plaintiff.
Judgment may enter for the defendant on the second count of the plaintiff's complaint.
 IV FRAUD
The plaintiff, to prove common law fraud, must present clear, precise and unequivocal evidence. Kilduff v. Adams, Inc.,219 Conn. 314 (1991). The plaintiff has failed to meet this standard. CT Page 3293 The court finds there is no evidence of fraud.
Judgment may enter for the defendant on the third count of the plaintiff's complaint.
NOVACK, J.