[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. This matter has been vigorously contested by the parties. The court heard testimony over the course of fourteen days of trial and reviewed over one hundred exhibits. Based upon the evidence presented, the court makes the following findings.
The plaintiff and the defendant married on October 11, 1985. The parties have continuously resided in the state of Connecticut for at least twelve months prior to the bringing of this action. The marriage has broken down irretrievably. The parties have one minor child, Kate, age eight, born as a result of the marriage. CT Page 86-A
This marriage is the plaintiff's first marriage and the defendant's second marriage. The defendant has two adult children from his previous relationship.
The plaintiff is thirty-seven years old and in good health. She has an accounting degree from Quinnipiac College and is a certified public accountant. She is currently employed as a regulatory manager at Southern New England Telephone Company (SNET). The plaintiff works thirty hours per week at SNET and earns a gross income of approximately $46,000 annually. Her net weekly income, including her annual bonus, is $695.
The defendant is fifty years old. He is a high school graduate. He suffers from a variety of health problems, including high blood pressure, elevated blood sugar, a significant loss of hearing in his right ear and nerve damage in his foot. In addition, as a result of undergoing hernia surgery on two occasions in 1994, the defendant has a limited ability to lift heavy objects.
The defendant has owned and operated his own home improvement and construction business since 1975. The defendant also receives rental income from commercial property he owns at 12 Tipping Drive in Branford. The court finds that his net weekly income CT Page 86-B from employment and from his rental property is $588.
The plaintiff and the defendant first met in 1975. The defendant was hired by the plaintiff's family to renovate their home after a fire. The plaintiff and defendant began a romantic relationship soon thereafter. The plaintiff was sixteen years old and the defendant was twenty-nine years old. The defendant was also married at the time.
The parties' relationship continued through the plaintiff's high school and college years. They married in 1985.
The parties began experiencing problems in the marriage in 1990. They physically separated in November 1993, when the plaintiff moved with Kate out of the marital home. Each of the parties points to the other as the cause of the breakdown of the marriage. The court does not find that either party is singularly at fault for the dissolution of the marriage.
A primary focus of this litigation has been a dispute over custody and visitation of the minor child, Kate. The plaintiff wants sole legal custody of Kate and the defendant has requested joint legal custody with primary physical residence of Kate with him. The extent of visitation by the noncustodial parent has also been zealously contested. CT Page 86-C
Two separate custody evaluations were conducted. An evaluation was undertaken by Stonewall Lane, a family services counselor with the Office of Family Relations, from August 1995 through December 1995. Lane determined that both parties were loving, capable and competent parents who were unable to cooperate in parenting Kate. The parties were continually in conflict and hostile to one another. Lane found that the discord was having an adverse impact on Kate. He recommended that the court award sole legal custody of Kate to the plaintiff and provide the defendant with visitation on alternating weekends from Friday 6:00 p.m. to Monday 9:00 a.m. and on Wednesdays from 3:00 p.m. to 7:00 p.m.
Dr. John Collins, a licensed psychologist and assistant clinical professor at Yale, also conducted a custody evaluation. His study was performed from January through March 1996. Collins similarly found that both parties were fine parents and that each enjoyed a good relationship with their child. He determined that a control battle was raging between the parties, with the defendant having the greatest need to prevail. He concluded that the defendant was obsessed with what is happening with Kate.
Collins also found that the defendant was oblivious to the need for boundaries. Collins opined that boundaries were CT Page 86-D necessary after any divorce, particularly with respect to the development of a child of divorce. He also felt that "lack of boundaries will place the adults in undesirably frequent contact (though of course some contact will be necessary) and will be confusing and destabilizing to Kate."
Collins recommended joint legal custody with primary physical residency with the plaintiff. He acknowledged that his recommendation of joint custody is "open to the criticism that there is such serious strife the chances of a successful outcome of joint legal custody are modest, at best." As a result, he suggested a review of the situation by the court in six months to determine if the previous rancor between the parties has continued. If it has, Collins recommended that sole custody be awarded to the plaintiff. He also advised that the defendant be given visitation on alternating weekends from Friday 6:00 p.m. to Sunday 6:00 p.m. and every Wednesday from after school to Thursday drop off at school.
The legal standard governing the determination of custody is clear. The court must award custody based on the best interests of the child. See General Statutes § 46b-56(b). Nevertheless, a custody decision is one of the most difficult judgments made by any court. It involves fundamental rights and powerful emotions. It determines the future care and well-being of a child. CT Page 86-E
It is manifest that the plaintiff and the defendant, individually, have a wonderful relationship with their daughter. Each of them is a warm and loving parent. Their relationship with each other as it relates to Kate, however, is far from ideal. They are quarreling and Kate is their battleground.
Their deep and constant conflict was apparent to both evaluators and to this court. Their disputes run the gamut, from the simple such as how Kate gets home from school and the frequency of phone calls by the defendant, to the fundamental, such as whether Kate is doing well in school and her need for psychological counseling. They are unable to communicate, negotiate or agree. When they do ultimately find consensus, the battles do not end as evidenced by the strife that followed their pendente lite agreement of September 1994. Unfortunately, Kate is often placed in the middle of these disputes.
Given the parties' conflict over Kate and their inability to set aside their differences when addressing her needs, an award of joint custody would not be in Kate's best interests. Sole custody with precise and substantial visitation by the noncustodial parent would best meet Kate's needs because it would preserve her relationship with each parent while minimizing the discord between them. CT Page 86-F
The plaintiff has been Kate's primary care giver. Kate also identifies her home as with her mother. It is most appropriate that sole custody be awarded to the plaintiff.
The dissolution hearing also involved extensive disagreement over the distribution of property. The parties disputed the enforceability of a prenuptial agreement. They also differed on the value of their property and on the assignment of their respective interests.
Approximately two weeks before their wedding, the defendant presented the plaintiff with a proposed prenuptial agreement while they were driving in a car. Although the parties had briefly discussed prenuptial agreements in general terms prior to that date, they had not discussed entering into such an agreement themselves.
The defendant told the plaintiff that he wanted a prenuptial agreement to preserve his premarital assets for the children from his prior marriage. The plaintiff asked what would happen if the parties had their own children. The defendant responded that the agreement would be void if a child was born. The defendant also told the plaintiff that if she did not sign the agreement, the wedding would be canceled. Whereupon, the plaintiff signed the CT Page 86-G agreement.
The plaintiff had no role in preparing the document or negotiating its terms. She was not represented by counsel. No specific financial disclosure was made at the time the prenuptial agreement was provided to the plaintiff. The agreement provides that neither party shall make any claim of interest in any real or personal property owned by the other before the date of their marriage.
The defendant asserts that the prenuptial agreement is a valid contract that should be followed. The plaintiff claims that the agreement should not be enforced because the defendant failed to fully disclose his financial condition to her prior to her signing the agreement, see McHugh v. McHugh, 181 Conn. 482
(1980), and because the parties have had a child as a result of the marriage.
The court finds based upon the evidence presented that the parties orally agreed that the prenuptial agreement would be void upon the birth of a child to the plaintiff.[1] It was the intent and agreement of the parties that they would not be bound by the prenuptial agreement should they have a child. Since they have had a child, the prenuptial agreement is void.
The parties jointly own the marital home at 1280 Little CT Page 86-H Meadow Road in Guilford. The court finds the fair market value of the home to be $240,000. The property is presently encumbered by a mortgage with an outstanding balance of approximately $101,000.
The parties also jointly own residential property in West Dover, Vermont. The current fair market value of the property is $105,000. The property currently has a mortgage of approximately $94,000.
The defendant owns commercial property at 12 Tipping Drive in Branford. Two buildings are constructed on the property and they are currently rented by the defendant to three commercial tenants. He receives rents totaling $2,500 each month. The unimproved land was purchased by the defendant in 1984 prior to the marriage. The building permits for construction of the buildings and the certificate of occupancy were received after the marriage in 1985.
Each party presented testimony of an expert witness as to the current value of the property at 12 Tipping Drive. The court finds the testimony of the plaintiff's expert to be more persuasive on this issue.
The defendant's expert primarily used the cost approach in arriving at his opinion as to the fair market value of the CT Page 86-I property. He used figures from the Marshall Valuation Service in computing the current replacement cost of the improvements on the property. He neglected to use the updated 1996 figures from the Marshall Valuation Service. He also used the cost figures for storage warehouses, rather than the figures for industrial light manufacturing. The letter sent by the defendant to the planning and zoning commission indicates that the buildings were constructed for light industrial use and the buildings are presently used for light industrial manufacturing.
The court finds the current fair market value of the property at 12 Tipping Drive, Branford to be $225,000. The property is encumbered by a mortgage with a balance of approximately $24,000.
The plaintiff has a pension plan with her employer which has a present value of $87,226. She also has a management retirement savings plan with a present value of $41,271.
The defendant has a number of bank accounts containing significant sums. Attorney Robert Ruggiero, Jr. is holding $53,341 in a client funds account at New Haven Savings Bank in trust for the defendant. These funds represent the balance remaining from the sale of the defendant's interest in residential property located at 2 Woodvale Road in Branford. The property was owned by the defendant and his first wife. In March of 1994, the defendant's ex-wife purchased his interest in the CT Page 86-J property.
The defendant also has a savings account at New Haven Savings Bank with a balance as of September 30, 1996 of $34,339. This account deserves special mention because the defendant has endeavored during the course of the dissolution to place the funds in the account beyond the reach of the plaintiff and this court.
On October 29, 1993, prior to the plaintiff moving out of the marital premises, the balance in the defendant's savings account at New Haven Savings Bank was $62,192. Within a few weeks after service of the writ, summons and complaint in the dissolution; action, the defendant withdrew approximately $28,000 from the account. He obtained three cashier's checks, each for $7,500, in the names of each of his children. He ultimately cashed these cashiers' checks and spent the entire $28,000. The defendant also added his son's name to the account one week after the dissolution writ was filed with the court. The indisputable purpose underlying these actions was to frustrate any claim that the plaintiff may have to the money.
The defendant also violated the court's order restraining the transfer of assets by making withdrawals from the account. On November 30, 193, the court issued an order restraining the CT Page 86-K defendant from "selling, encumbering, or transferring assets in which he has an interest, including without limitation, cash or funds on deposit. . . ." On January 13, 1994, March 9, 1994 and April 4, 1994, the defendant withdrew funds from the account totaling approximately $7,500.
The defendant also has a number of other bank accounts that he failed to disclose on his financial affidavit. These bank accounts include an individual checking account at New Haven Savings Bank, a business checking account at Fleet Bank, and an account at Guilford Savings Bank for the Tipping Drive property.
A party to a dissolution proceeding has the obligation to file a sworn financial affidavit that discloses his or her income and expenses. Practice Book § 463. The duty is one of full and frank disclosure of financial information. Billington v.Billington, 220 Conn. 212, 219-220 (1991).
The defendant did not comply with this essential obligation. He failed to fully and accurately disclose his income, his expenses and his assets.
In determining the orders contained herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-56 as they relate to CT Page 86-L custody and visitation, § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, and § 46b-84 as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The plaintiff is awarded sole custody of the minor child, Kate.
3. The defendant is awarded the following visitation:
 a. Every other weekend from Friday 6 p.m. until Sunday 5 p.m.
b. Every Wednesday after school until 6 p.m.
c. Every other Tuesday after school until 6 p.m.
4. The parties shall alternate the following holidays with Kate: New Year's Day, Easter, Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas Eve and Christmas Day.
5. Kate shall spend Mother's Day with the plaintiff and CT Page 86-M Father's Day with the defendant.
6. The defendant shall be granted three weeks visitation during the summer, two of which may be consecutive. The defendant shall provide the plaintiff with thirty days notice of such vacation and provide her with the child's itinerary, including address and telephone number. The defendant's visitation shall be suspended for two consecutive weeks in the summer for the purpose of the plaintiff having uninterrupted vacation time with Kate.
7. The defendant may have one telephone conversation with Kate per day.
8. The defendant shall pay child support to the plaintiff in the amount of $119 per week.
9. The plaintiff shall continue to provide medical insurance for the minor child as available through her place of employment. The plaintiff and the defendant shall share equally the cost of any uninsured and unreimbursed health care expenses, including medical, dental, orthodontic, psychiatric and psychological expenses, for the minor child.
10. The residential property in West Dover, Vermont shall be sold. The net proceeds from the sale shall be divided equally CT Page 86-N between the plaintiff and the defendant. Net proceeds are defined as the funds remaining after payment of any mortgages and liens and the usual and customary costs associated with a sale. Any deficiency after the sale shall be equally divided between the parties. The court shall retain jurisdiction over the sale of the property.
11. The defendant is awarded sole ownership of the marital home at 1280 Little Meadow Road, Guilford, Connecticut. The plaintiff shall convey her interest in the property by quitclaim deed within thirty days of the date of this decision. The defendant shall be solely responsible for paying the mortgage, taxes, and liens, if any, on the property. The defendant shall hold the plaintiff harmless and indemnify the plaintiff with respect to any and all mortgages, liens and encumbrances on the property. The defendant shall obtain, if possible, a refinancing of the current mortgage so that the plaintiff is no longer a mortgagor.
12. The defendant shall retain sole ownership of the commercial property at 12 Tipping Drive, Branford, Connecticut.
13. The defendant shall retain ownership of the client funds account being held for him by Attorney Robert Ruggiero, Jr.
14. The defendant shall retain ownership of the bank accounts CT Page 86-O and stock in his name.
15. The plaintiff shall retain sole ownership of her SNET pension and management savings retirement plan.
16. The defendant shall pay the plaintiff $115,000 as a property distribution. Payment of $80,000 shall be made by March 1, 1997 and the remainder shall be paid by September 1, 1997. The defendant shall within two weeks of this decision provide the plaintiff with a note and mortgage in the amount of $115,000 secured by the property at 1280 Little Meadow Road, Guilford to insure compliance with this order.
17. The plaintiff shall be awarded sole ownership of the Chrysler automobile and the defendant shall be awarded sole ownership of the Trooper automobile.
18. Each party shall retain the personal property currently in his or her possession.
19. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits.
20. Each of the parties shall be responsible for payment of CT Page 86-P their respective attorney's fees.
21. The parties shall be equally responsible for payment of Dr. John Collins' fees. The court finds that the total remaining fee due Dr. Collins is $512. Each party is ordered to pay their, one half share within thirty days.
22. The parties shall be equally responsible for payment of the fees of Attorney Deborah Eldrich, the attorney for the minor child.
23. The plaintiff's maiden name of Diane Stober is restored.
Jon M. Alander, Judge