[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties married on January 16, 1988. Their union produced two children. The marriage was dissolved on October 16, 1996, (Steinberg, J.), on the ground of irretrievable breakdown. At the time of the dissolution, the court approved and ordered the custody and shared parenting agreement entered into between the parties. Further, the court reserved jurisdiction of financial issues which were to be presented to the Superior Court at Stamford. This court took evidence on the financial issues over several days between April 24, 1997 and May 13, 1997.
The parties separated seven years after their marriage. By agreement, with approval of the court, they share custody, spending equal time with their two children, ages 5 and 4. The plaintiff is 56 years old and enjoys good health. The defendant is 40 years old. She has been treated by a dermatologist for benign or borderline nevi on her body and by a neurosurgeon for a lymphoma on her spinal canal. Although both conditions require monitoring, no evidence was presented indicating the defendant suffers from any disability or life threatening condition.
The plaintiff's formal education terminated after two years of college. His employment history indicates some attempts in operating restaurants, working as a real estate salesman and dealing in antiques, all efforts with no apparent success. Gifts and inheritances from his parents were the sources of his assets which he has used to support the parties and their children during the marriage and thereafter.
The defendant worked as an actress and model when she married the plaintiff. She stopped pursuing those careers and has not worked during the marriage.
This was a stormy marriage from early on. The plaintiff traces the problems to differences in parenting styles and the lavish spending habits of the defendant. The evidence indicates CT Page 5843 that both parties enjoyed a life style that was unconcerned with costs and geared to experiencing all the comforts and pleasures available. There was no apparent real concern by the plaintiff that the spending habits of the parties required the invasion of assets to pay for their expenses. That pattern continued after their separation and divorce. Each party must bear some degree of responsibility for the failure of this marriage.
Shortly before their marriage the parties entered into a prenuptial agreement. The plaintiff has requested the court to enforce the agreement entered into on December 18, 1987.
 I Prenuptial Agreement
The threshold issue presented is the validity of the prenuptial agreement entered into between the parties. They executed a written agreement on December 18, 1987, approximately thirty days before their marriage.
In this jurisdiction, a prenuptial agreement is not entitled to automatic recognition or enforcement in a dissolution proceeding. Effective October 1, 1995, all prenuptial agreements executed thereafter are subject to the provisions of the Connecticut Premarital Agreement Act, § 46b-36a-j of the Connecticut General Statutes. The parties' agreement is not covered by this statute because their agreement was entered in 1987. They are, therefore, subject to the common law of this state on the issue of validity.
The Connecticut Supreme Court in McHugh v. McHugh,181 Conn. 482 (1980), has set forth a three pronged test for determining the validity and enforceability of such agreements, as follows:
Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice. CT Page 5844
The defendant has not seriously contested the first two requirements set forth in the McHugh case, except for the interpretation of the addendum to the agreement. The court finds that the contract was validly entered into between the parties. There was full disclosure of assets by each and no duress was claimed by the defendant. A review of the contract reveals that its terms offend no statute or public policy of this state.
To properly evaluate the effect of enforcing the terms of the agreement, the court was required to determine what claims the defendant could make, as set forth in the addendum to the agreement, against the plaintiff's ownership of Coca Cola stock.
The plaintiff owned approximately 16,000 shares of Coca Cola stock at the time of the agreement. The addendum provided that for the first twenty-four months thereafter the defendant had no claim for any of the stock. After twenty-four months, the defendant could make a claim to any increase in value of one-quarter of the amount of stock the plaintiff then owned. The "amount then owned" was defined as a maximum of twenty-five percent of stock owned and not to exceed 4,000 shares as adjusted for stock splits or extraordinary stock dividends.
The evidence disclosed and the court finds:
1. There were no stock splits or extraordinary stock dividends during the twenty-four month period following December 18, 1987, the date of the antenuptial agreement.
2. On December 18, 1989, one-fourth of the Coca Cola stock owned by the plaintiff was at least 4,000 shares.
3. On that date, the value of the stocks was $40.00 per share.
4. The present value of the stock is $62.75 per share.
5. The increase in value of the 4,000 shares subject to consideration as provided in the agreement is $91,000.00.
This analysis of the addendum agrees with the interpretation offered by the plaintiff. On the other hand, the defendant has suggested an interpretation that far exceeds the language of the addendum and defies any reasonable explanation for the results she reaches. CT Page 5845
The third prong of the McHugh test deals with a comparison of the circumstances of the parties at the time of dissolution with the time the contract was entered into to determine if the enforcement of the contract would work an injustice. This requirement has been more concisely stated in the Connecticut Premarital Agreement Act, which as previously stated, does not apply to the subject agreement. That act states the agreement shall not be enforceable if the "agreement was unconscionable when it was executed or when enforcement is sought."
This requirement of fairness has given the court some concern. Under all the circumstances of this case, the court has concluded it would be unfair to enforce the terms of the prenuptial agreement.
Since their marriage, the parties had two children, both of whom are still young. The parties have agreed to joint legal and physical custody of the children, and both must provide housing for the children. The parties did not consider this situation when the agreement was made.
During their marriage the parties lived a lavish life style, and the plaintiff has continued to do so since their separation and dissolution of marriage. This resulted partially from the sizeable and uncontemplated increase in the plaintiff's assets. At present, the plaintiff's assets are approximately six times what they were at the time of marriage. It would be inequitable to restrict the defendant to the parameters set forth in the agreement.
The court declines to enforce the prenuptial agreement of the parties.
 II
The court has carefully considered the statutory criteria set forth in Connecticut General Statutes, § 46b-62, 46b-81,46b-82 and 46b-84 in reaching the decisions reflected in the orders that follow.
The following orders may enter.
1. As an equitable distribution, the plaintiff is ordered to transfer to the defendant the following assets: CT Page 5846
a. Coca Cola stock having a value of $500,000 within 10 days from the date of judgment.
b. The sum of $700,000, in cash, on or before September 1, 1997.
c. The plaintiff shall transfer to the defendant his interest in the New York City Co-operative apartment, subject to the outstanding mortgage which the defendant shall assume. The defendant shall indemnify and hold harmless the plaintiff from any liability thereon.
d. In making the orders, as stated above, the court has taken into consideration that the plaintiff has previously paid $10,000 to the defendant as an advance against the property division.
2. The defendant shall transfer her interest in the marital residence located at 339 Stanwich Road, Greenwich, Connecticut, to the plaintiff, subject to the outstanding mortgage which the plaintiff shall assume. The plaintiff shall indemnify and hold harmless the defendant from any liability thereon.
The defendant shall have exclusive possession of the marital residence until five days prior to any scheduled closing of the sale of the property, but in no event later than September 1, 1997, at which time she shall vacate the residence.
The defendant shall permit the plaintiff or his authorized representative to show the property to prospective purchasers. The visits shall be at reasonable times upon the giving of reasonable notice to the defendant. The court reserves jurisdiction to resolve any disputes concerning the defendant's occupancy and vacating of the residence.
3. The plaintiff shall retain his real property at 49 Tomac Avenue, Old Greenwich, Connecticut; his bank accounts; his automobiles; his securities; and his interest in the Naples Land Trust.
4. The defendant shall retain her Volvo automobile; her checking account and personal injury claims.
5. The parties shall divide their personal property by CT Page 5847 agreement. They shall also attempt to agree which antiques are the property of the plaintiff. The court retains jurisdiction to resolve any disputes over these two issues.
6. The plaintiff shall pay to the defendant as periodic alimony, the sum of ten thousand ($10,000.00) dollars per month for a period of sixty consecutive months commencing on the first day of the month following the defendant's vacating the marital residence. The payments shall terminate upon the death of either party or remarriage of the defendant, and they shall be subject to the provisions of Connecticut General Statutes, § 46b-86b. The alimony shall be non-modifiable as to term.
The court finds that the plaintiff's sources of funds for supporting his family consist of his investment income of $154,000.00 per year and money from the sale of assets at the rate of $350,000 per year.
The court, after considering the property division, has concluded a term of five years for alimony payments is appropriate. The defendant's age, talent and skills give her an opportunity to resume her former career. She will also have the chance to complete her formal education in a field of her choice. In addition, the asset division ordered offers the defendant an opportunity to obtain investment income for financial assistance in the future.
Until the defendant vacates the marital residence, the plaintiff shall pay her as periodic alimony the sum of five thousand ($5,000.00) dollars per month, commencing June 1, 1997. The plaintiff shall be responsible, from the date of judgment, for the home mortgage with tax and escrow payments, the homeowner's insurance bill, the security system and the electric, gas, and utility charges in reference to the marital residence.
While living in the marital residence, the defendant shall pay from June 1, 1997 the cable TV and telephone charges, and any household help she employs.
A contingent wage withholding order may enter.
7. The plaintiff shall continue the defendant on the existing medical insurance at the plaintiff's expense for a period of two years from the date of judgment. If the plaintiff is unable to carry the defendant on his policy or wishes not to do so, or the CT Page 5848 defendant wishes to get her own medical insurance coverage, then the plaintiff shall contribute the sum of $250.00 per month towards the cost of medical insurance for the defendant. This obligation shall run only for two years from the date of judgment or for as long as plaintiff pays periodic alimony to the defendant, whichever first occurs.
8. The plaintiff shall continue to be responsible for expenses relating to the minor children, including maintenance of medical insurance, payment for all reasonably incurred medical and dental bills, educational expenses and extraordinary expenses such as camp and extracurricular activities.
Since the parties share joint legal and physical custody of the children, no additional child support shall be payable by the plaintiff to the defendant.
9. The plaintiff shall maintain life insurance for the defendant as an irrevocable beneficiary, with a face value of two hundred thousand ($200,000.00) dollars, as long as the plaintiff is obligated to pay periodic alimony or child support.
10. The defendant shall pay her one-half share of the fees due to Elizabeth Sharpe, counsel for the minor children. The amount due is $30,819.50. The plaintiff shall pay counsel for the minor children the sum of $3,386.25, which represents the balance due on his share of this obligation.
11. Each of the parties shall pay the liabilities disclosed on their respective financial affidavits and any undisclosed liabilities. The plaintiff lists debts of $35,815.00. The defendant indicates debts of approximately $412,000 (slightly higher than shown on her financial affidavit), which includes the balance due on her attorney's fees.
The defendant has requested the plaintiff to be ordered to pay the outstanding bill of her treating psychiatrist, Doctor Edward Brennan. The basis of her request is the ruling at the pendente lite hearing by the court (Ryan, J.) that the plaintiff would be responsible for the treatments by Doctor Brennan, pendente lite, if the defendant could satisfy the court that her visits with the doctor were reasonably medically necessary.
The defendant did not return to court to pursue this request, pendente lite, and continued to visit Doctor Brennan. The CT Page 5849 defendant, however, presented evidence before this court on the issue of necessity for therapy sessions with her doctor.
The court finds that the defendant has failed in her burden to persuade the court of the necessity for psychotherapy for her. Therefore, the court declines to order the plaintiff to pay the outstanding bill of Doctor Brennan.
12. Each party presented evidence on motions for contempt filed by them. The plaintiff's motion was dated March 17, 1997 (#208) and stated that the defendant sold personal property while there was an order outstanding against the sale or transfer of any assets.
The defendant's motion was dated April 23, 1997 and claimed the plaintiff violated a restraining order against the transfer of assets by conveying a half interest in realty to his current wife.
The court finds that both parties wilfully violated the order against disposing of property.
The behavior of the parties in addition to being a civil contempt, was a criminal contempt because of their violations of a court order. The court has decided not to have them prosecuted in the criminal court because of its interest in bringing finality to this case.
In reference to the defendant's contempt in selling assets and receiving the sum of $15,300.00, the court will order no repayment to the plaintiff. The court has taken into consideration in its allocation of assets that the defendant has received the benefits of the sales proceeds.
In reference to the plaintiff's contempt in conveying an interest in his current residence to his current spouse, no financial prejudice was suffered by the defendant.
Plaintiff's Motion For Contempt (#208) is granted.
Defendant's Motion For Contempt (dated April 23, 1997) is granted.
13. Each party shall pay his and her own attorney's fees. Judgment may enter accordingly. CT Page 5850
NOVACK, J.