PATRICIA M. McHUGH *v.* JAMES J. McHUGH III

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued March 13—decision released July 15, 1980

*Marilyn P. A. Seichter,* for the appellant (defendant).

*Irving H. Perlmutter,* with whom, on the brief, was *Gary P. Sklaver,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This case concerns the effect of an antenuptial agreement between the parties upon the trial court's judgment dissolving their marriage and ordering a property settlement. The plaintiff and the defendant met in early 1974 and sometime in April, 1974, decided to live together without being married. On February 20, 1976, the parties married and on April 22, 1976, the plaintiff gave birth to a child. In July, 1978, the parties' brief and stormy marriage was dissolved.

Prior to their marriage, the plaintiff and the defendant had entered into an antenuptial agreement. In that agreement the parties stated that they intended to retain individual ownership of the property that each had acquired prior to the marriage "to the same extent as if each had remained single." The agreement went on to set out the particular property it was intended to encompass,

including the parties' automobiles, bank accounts, various items of personal property, and two parcels of real property owned by the defendant and located in Bethany. Paragraph three of the agreement provided that "[a]ll earnings from employment of either party after the marriage shall be considered joint funds, and each shall have an undivided one-half interest therein." Further provision was made for the parties' receipt of gifts during the marriage, for the sale of individually owned property during the marriage, and for the disposition of the parties' property at death.

The trial court, in the judgment dissolving the marriage, entered various orders, which provided, inter alia, that the plaintiff have custody of the minor child; that she be awarded lump sum alimony of $15,000 payable in certain installments; and that the defendant transfer his interest in the jointly owned family home in Woodbridge to the plaintiff.

On appeal, the defendant does not take serious issue with the alimony award or any other aspect of the trial court's judgment,[1] except that portion requiring him to transfer to the plaintiff his interest in the family home.[2] The defendant claims that the

[1] In his brief, the defendant suggests that even the award of alimony constituted an infringement on the parties' rights "to arrange their financial affairs privately and to avoid the interference of the state." An examination of the agreement discloses, however, that there is no provision of it that can be construed as even remotely governing the parties' rights to alimony upon dissolution of the marriage. Moreover, no such claim was raised by the defendant in his preliminary statement of issues.

[2] In this dissolution action the defendant pleaded the antenuptial agreement of February 7, 1976, by way of special defense. In her reply to this special defense, the plaintiff admitted the allegations of the special defense and then alleged that (a) the agreement was unenforceable because it was coerced from her and that (b) it was also unenforceable because it conflicts with the provisions of General

parties' antenuptial agreement is enforceable and that this order violates that agreement. He reasons that because a portion of the down payment on the home together with the mortgage payments derived from his income, the order awarding to the plaintiff his interest in this property violated the "earnings clause" of the antenuptial agreement. We do not agree.

Because this case involves a claim that the terms of an antenuptial agreement relating to the property of the parties is binding upon the court in a dissolution action, a question that this court has not previously decided, it is appropriate at the outset to consider generally the enforceability of such agreements. The validity of an antenuptial contract depends upon the circumstances of the particular case. *Wulf* v. *Wulf*, 129 Neb. 158, 161, 261 N.W. 159 (1935). Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was

---

Statutes §§ 46-42, 46-51 and 46-52. The defendant thereafter interposed a demurrer to that portion of the reply to the special defense, which was overruled by the court without a memorandum. The record discloses that the defendant filed in the trial court a notice of his intent to appeal from the overruling of his demurrer. Practice Book, 1978, § 3001. On appeal, the defendant does not challenge the legal sufficiency of the plaintiff's reply to his special defense and the plaintiff does not pursue her two-pronged claim that the antenuptial agreement is unenforceable. Therefore, we only consider the defendant's claim that the trial court did not properly enforce the agreement.

entered into as to cause its enforcement to work injustice. See Clark, Law of Domestic Relations (1968) § 1.9; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts (Rev. Ed. 1970) § 90; 1 Nelson, Divorce & Annulment (1945) § 13.03; 41 C.J.S., Husband-Wife §80; 41 Am. Jur. 2d, Husband & Wife §§ 283-305; annot., 57 A.L.R.2d 942.

An antenuptial agreement is a type of contract and must, therefore, comply with ordinary principles of contract law. *In re Estate of Rosenstein,* 326 So. 2d 239 (Fla. App. 1976); *In re Estate of Luedtke,* 65 Wis. 2d 387, 222 N.W.2d 643 (1974); 2 Lindey, op. cit. § 90, p. 90-68; Clark, op. cit. § 19, p. 27; see 41 Am. Jur. 2d, Husband & Wife §§ 283, 288. To determine whether an antenuptial agreement relating to property was valid when made, courts will inquire whether any waiver of statutory or common-law rights, or the right to a judicial determination in any matter, was voluntary and knowing. See, generally, 2 Lindey, op. cit. § 90, p. 90-77. A party must, of course, be aware of any right that he possesses prior to a proper waiver of it. Ibid.; see *In re Estate of Taylor,* 205 Kan. 347, 355, 469 P.2d 437 (1970); see also *Stern & Co.,* v. *International Harvester Co.,* 148 Conn. 527, 534, 172 A.2d 614 (1961). The duty of each party to disclose the amount, character, and value of individually owned property, absent the other's independent knowledge of the same, is an essential prerequisite to a valid antenuptial agreement containing a waiver of property rights. See *Friedlander* v. *Friedlander,* 80 Wash. 2d 293, 300, 494 P.2d 208 (1972); *Rosenberg* v. *Lipnick,* 377 Mass. 666, 389 N.E.2d 385 (1979); Clark, op. cit. § 1.9, p. 30; 2 Lindey, op. cit. § 90, pp. 90-54 to 90-56. "The burden is not on either party to inquire, but on each

to inform, for it is only by requiring full disclosure of the amount, character, and value of the parties' respective assets that courts can ensure intelligent waiver of the statutory rights involved. See, e.g., *Guhl* v. *Guhl,* 376 Ill. 100, 33 N.E.2d 185 (1941); *Megginson* v. *Megginson,* 367 Ill. 168, 10 N.E.2d 815 (1937); *Denison* v. *Dawes,* 121 Me. 402, 117 A. 314 (1922); *Hartz* v. *Hartz,* 248 Md. 47, 234 A.2d 865 (1967); *In re Estate of Kaufmann,* 404 Pa. 131, 171 A.2d 48 (1961); *In re Estate of McClellan,* 365 Pa. 401, 75 A.2d 595 (1950). See generally annot., 27 A.L.R.2d 883, §§ 3, 4 (1953 & Supp. 1978)." *Rosenberg* v. *Lipnick,* supra, 388; see also 41 Am. Jur. 2d, Husband & Wife § 297. It has been said that "[u]nder ordinary circumstances, parties to an ante-nuptial agreement do not deal at arm's length; they stand in a relationship of mutual confidence that calls for the exercise of good faith, candor and sincerity in all matters bearing upon the agreement." 2 Lindey, op. cit. § 90, p. 90-47; see *Rosenberg* v. *Lipnick,* supra; see also Clark, Domestic Relations, loc. cit. Other factors that bear upon the validity of such contracts include which party drafted the agreement, by counsel or otherwise, and whether the parties were represented by counsel. 2 Lindey, op. cit. § 90, p. 90-70.

In *Sacksell* v. *Barrett,* 132 Conn. 139, 43 A.2d 79 (1945), this court recognized the validity of an antenuptial agreement in which each party released any claim or right to any property owned by the other at the time of marriage and in which each had agreed that upon the death of the other, the survivor would have no claim to such property.[3] Quot-

---

[3] In *Sacksell* we were called upon to construe General Statutes § 5156 (1930 Rev.), the predecessor of General Statutes § 45-273a, in determining the rights of the surviving spouse.

ing *Staub's Appeal*, 66 Conn. 127, 134, 33 A. 615 (1895), we stated in *Sacksell* that "[o]n principle there appears to be no good reason why such an agreement, if fairly made and entered into, by a [person] of full age, for adequate consideration received, should not be binding upon [him]." *Sacksell* v. *Barrett*, supra, 145. The court's first inquiry, then, is to ascertain whether the agreement complies with the ordinary principles of contract law and whether its terms and the circumstances surrounding its execution are such as to demonstrate that the parties were aware of their legal rights and their respective assets and liabilities, and proceeded by the agreement to alter those rights in a fair and voluntary manner.

It is clear that antenuptial agreements will not be enforced where to do so would violate the state statutes or public policy. See annot., 57 A.L.R.2d 942 § 2. In this regard, it is necessary to distinguish between the violation of statute and the informed and voluntary waiver of rights created by statute. The former is prohibited while the latter is typically the object of such agreements. See *Sacksell* v. *Barrett*, supra; 2 Lindey, op. cit. § 90, p. 90-74. A spouse's waiver of the right to claim entitlement to certain property upon dissolution of marriage, for example, could, under appropriate circumstances, be valid, while a spouse's contractual agreement not to be liable upon dissolution of marriage for the support of children he has a duty to support would not be. See *Van Zandt* v. *Van Zandt*, 15 Conn. Sup. 262, 263 (1947); *Alves* v. *Alves*, 262 A.2d 111, 117 (D.C. App. 1970); 41 Am. Jur. 2d, Husband & Wife § 283. Similarly, antenuptial agreements that promote, facilitate or provide an incentive for sep-

aration or divorce are generally opposed to public policy and of dubious enforceability. *Volid* v. *Volid,* 6 Ill. App. 3d 386, 389–91, 286 N.E.2d 42 (1972); 2 Lindey, op. cit. § 90, p. 90-04; Restatement (Second) Contracts § 332 (Tent. Draft No. 12, 1977). Thus, a provision of an antenuptial agreement waiving the right to defend against a future divorce action, or one creating a substantial economic advantage upon dissolution irrespective of fault, or one relieving one spouse of the duty to support the other during the marriage, has been said to contravene public policy. See Clark, op. cit. § 1.9, p. 29; 2 Lindey, op. cit. § 90, pp. 90-94 to 90-95; 6A Corbin, Contracts (1962) § 1474; annot., 57 A.L.R.2d 942 § 2.

Finally, an antenuptial agreement will not be enforced where the circumstances of the parties at the time of the dissolution are so far beyond the contemplation of the parties at the time the agreement was made as to make enforcement of the agreement work an injustice. See Clark, op. cit. § 1.9, pp. 28-29. Thus, where a marriage is dissolved not because it has broken down irretrievably, but because of the fault of one of the parties, an antenuptial waiver of rights executed by the innocent party may not be enforceable, depending upon the circumstances of the particular case and the language of the agreement. See, e.g., *Eule* v. *Eule,* 24 Ill. App. 3d 83, 87–88, 320 N.E.2d 506 (1974); *Norris* v. *Norris,* 174 N.W.2d 368, 370 (Iowa 1970). Likewise, where the economic status of parties has changed dramatically between the date of the agreement and the dissolution, literal enforcement of the agreement may work injustice. Absent such unusual circumstances, however, antenuptial agreements freely and fairly entered into will be honored and enforced by the courts as written. See id., 369.

There is no indication that the agreement entered into in this case violated any of the principles set out above.[4] The agreement was made by the parties in accordance with basic principles of contract law; it does not violate statute or public policy; and there is no suggestion that the circumstances of the parties at the time of the dissolution had dramatically changed from the time the agreement was made, two years earlier. Moreover, the trial court's conclusion that the parties' marriage had broken down irretrievably indicates that the marriage had ended without the legal fault of either party. See *Joy* v. *Joy*, 178 Conn. 254, 256, 423 A.2d 895 (1979). Finally, the agreement did not purport to absolve either party of any duty of support of the other during the marriage or of the duty of either to support any minor children of the marriage after dissolution. See *Tomlinson* v. *Tomlinson*, 352 N.E.2d 785, 791 (Ind. App. 1976). The agreement was, therefore, valid and enforceable by the court.

We now consider specifically the defendant's claim that the trial court erred in ordering him to transfer his interest in the family home to the plaintiff. The family home was concededly acquired by the parties after the marriage and was, therefore, not within the purview of that portion of the antenuptial agreement relating to property acquired before the marriage. The agreement by its terms did not purport to affect the parties' rights to real property acquired during the marriage, as it easily could have. The defendant's argument that the

---

[4] Although the plaintiff did claim at trial that she had been coerced into executing the antenuptial contract in question and that, therefore, the contract was unenforceable, no such finding was made by the trial court and, on appeal, no claim of error is directed to its failure to do so.

"earnings clause" of the agreement required the trial court to conclude that the plaintiff was entitled to only a one-half interest in the family home because a portion of the down payment and the mortgage payments were made from his income is unpersuasive. As we have said above, antenuptial agreements are to be construed according to the principles of construction applicable to contracts generally. "The basic purpose of construction is to ascertain and give effect to the intention of the parties." *Estate of Luedtke,* 65 Wis. 2d 387, 392, 222 N.W.2d 643 (1974). Where there is no ambiguity, however, there is no occasion for construction and the agreement will be enforced as its terms direct. Id., 392–93; 2 Lindey, op. cit. § 90, pp. 90-68 to 90-69. While the defendant's metamorphic argument may have some appeal in logic, it does not reflect the agreement of the parties, which apparently was prepared by the attorney for the defendant. See 2 Lindey, op. cit. § 90, p. 90-70.[5] The court did not err in ordering the defendant to transfer his interest in the family home to the plaintiff, especially in view of the fact that the plaintiff was awarded custody of the minor child.[6]

There is no error.

In this opinion the other judges concurred.

---

[5] We do not suggest by our conclusion that it would never be appropriate to "trace" funds that originate from a party's earnings under a similar clause. We conclude only that under the facts of this case, neither the language of the contract itself nor equitable considerations militate in favor of adopting such an approach to this clause.

[6] Because of our conclusion in this regard, we need not consider whether an antenuptial agreement containing a provision limiting the rights of a spouse to the family home upon dissolution would be enforceable where the provision would operate to the detriment of a minor child of the marriage.