[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, 60, and the defendant, 81, married on December 13, 1968 at Greenwich, Connecticut. It was the second marriage for each. The plaintiff has two daughters of her first marriage who are now 36 and 32. The defendant has two living children of his first marriage. There is one adult child of the present marriage, Elise, who completed her formal education in 1993.
At the time of this marriage, the defendant was Director of Marketing for Bankers Trust Co. Two years prior, the defendant had a slight stroke that impaired his peripheral vision and his ability to read. Six months after this marriage the eye strain led to the defendant's retirement. He has not been gainfully employed since nor did the plaintiff ever urge him to return to any work. None of these facts ever was an issue in the marriage.
The plaintiff owned 9 Perkins Road, Greenwich, Connecticut at the time of this marriage. It was the marital home until early 1994 when the plaintiff moved to her brother's residence. The parties stipulated that the premises are worth no less than $3,000,000.00. The property is unencumbered, and its adjusted cost basis is believed by the parties to be less than $500,000.00. It is presently listed for sale. To avoid the full impact of the capital gains tax, the premises were transferred to the defendant CT Page 12390 in 1993 with the understanding that the defendant would transfer title to the trustee of a revocable trust.[1] The trustee would return the property to the plaintiff upon the defendant's death with a stepped up adjusted cost basis, assuming that the defendant predeceased the plaintiff. The defendant considers the premises to be the plaintiff's solely.
Upon her father's death in 1971, the plaintiff became the owner of a one-third interest in a closely held family corporation known as Dellconn Oil Corporation, subchapter S for tax purposes. The plaintiff's shares of stock were transferred to the defendant for the same purposes as was the real estate. The defendant considers the stock to be the plaintiff's solely.
In 1993 the plaintiff received income from several sources, including income from five family trusts created by her grandfather, her mother and her father, and bequests.
The plaintiff's financial affidavit lists 1993 income:
Taxable interest income $45,218.00
Tax-exempt interest income 88,303.00 Dividends 43,775.00 Taxable trust income 128,358.00 Tax-exempt trust income + 122,292.00 ---------- Sub-total $427,946.00
Dellconn Oil + 125,000.00 ---------- Total $552,946.00
During the period 1989-1993, the Dellconn Oil distributions have ranged from $45,000.00 in 1989 to $240,000.00 in 1991.
As to the plaintiff's assets, suffice to say that the plaintiff's financial affidavit's total is slightly over $6,800,000.00.
The defendant's net income, monthly after taxes, as stated on his financial affidavit, is $6,000.00. His assets total $1,600,000.00.
During their marriage the plaintiff paid 75% to 80% of their CT Page 12391 living expenses. The defendant paid for their daughter's education. The plaintiff has paid all taxes for the past several years. The plaintiff has enjoyed good health throughout the marriage. Although the court has already noted the reasons for the defendant's retirement, it also notes that the defendant has not been hospitalized for illness in 25 years, plays tennis frequently and generally appears to live a vigorous life. The defendant had no warning of the plaintiff's separation until it happened. Afterward the defendant became depressed and sought professional help. For her part, the plaintiff testified that she had felt the defendant was possessive of her and of their child and that the defendant excluded the plaintiff's children from her first marriage. The plaintiff complained that her children would not visit with her at her home. The parties have filed a written stipulation that their marriage has broken down irretrievably as allowed by C.G.S. § 46b-51. It is not necessary for the court to dwell any longer on the causes for the breakdown. The court holds neither party more or less responsible.
The plaintiff urges the court to enforce a prenuptial agreement dated December 10, 1968 executed in and governed by Connecticut law. (Plaintiff's Exhibit #1).
The agreement recites that the plaintiff and the defendant
 ". . . have retained counsel of her and his own choice, and have been duly separately represented and advised by counsel, . . ."
This was testified to by both and the court is satisfied that the recitation is proven and true. The difficulty arises with the first "Whereas" clause and with Paragraph "Seventh" which recites that each party entered the agreement
 ". . . with knowledge of the nature, extent, value and location of the property, real, personal or mixed, now owned and possessed by the other or in which the other has a beneficial interest. . ."
No written disclosures were appended to the agreement and neither party could recall if any written material was exchanged prior the execution of the agreement. The plaintiff candidly acknowledged that she didn't know what assets the defendant possessed or what income he generated saying it was not her position to ask. The defendant was just as forthright in CT Page 12392 testifying that he knew she was a woman of some wealth but wanted to marry her because he loved her and not for her money. He had an antenuptial agreement with his first wife and was willing to execute a prenuptial agreement prior to marrying the plaintiff. The plaintiff's divorce had been completed six months previously and the plaintiff noted that her lawyer was fully aware of her financial circumstances. This case does not involve any coercion, duress, misrepresentation or wilful failure to disclose.
McHugh v. McHugh, 181 Conn. 482 is the leading case on antenuptial agreement validity. The holding in McHugh determined that the terms of the antenuptial agreement did not cover real property acquired during the marriage and that the defendant had only himself to blame, since his attorney drafted the agreement.Id. at p. 491.
In dictum, the court set out the tests to be applied to an antenuptial agreement.
 "Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice." (Citations omitted). Id.
P. 485.
The first difficulty in the present case is the parties' inability to demonstrate that they fulfilled the duty
 ". . . to disclose the amount, character, and value of individually owned property, absent the other's independent knowledge of the same, [which] is an essential prerequisite to a valid antenuptial agreement containing a waiver of property rights." Id. p. 486
The second difficulty is the court's inability to determine if the present circumstances are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice. As the defendant's counsel pointed out, there is no "base line". CT Page 12393
For the foregoing reasons, the court holds the antenuptial agreement to be unenforceable.
The plaintiff has purchased a condominium unit located in Lyon Park which she has offered to the defendant as a residence during his lifetime. He has requested title to same as well as possession.
For over 25 years the defendant has been able to enjoy a lifestyle underwritten by the plaintiff. It is appropriate that the plaintiff continue to supplement the defendant's budget to allow him to continue in his same station in life. A periodic alimony order is found to be appropriate. The defendant has enjoyed the use of a family auto, currently a Lexus, which he should be allowed to keep as his own vehicle.
The plaintiff submitted Exhibit #3 that listed various items of furniture, etc., by room with items checked in red by the plaintiff indicating her claim to it. The court intends to order all contents of 9 Perkins Road assigned to the plaintiff except for the Schedule A list attached to this memorandum.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered dissolving the parties marriage on the ground alleged in the complaint. The defendant's cross-complaint is dismissed as moot.
2. The defendant shall take all necessary steps to terminate the revocable trust of May 20, 1993 and the assets therein shall be turned over to the plaintiff.
3. The real property condominium unit known as 212 West Lyon Farm, Greenwich, Connecticut is ordered transferred to the defendant in fee simple with marketable title free and clear of all encumbrances save closing adjustments for current taxes and current common charges.
4. The Lexus auto is ordered transferred to the defendant as his sole property free of lien excepting current taxes.
5. The contents of 9 Perkins Road, Greenwich, Connecticut are awarded to the plaintiff except for the items listed on Schedule A CT Page 12394 attached which are awarded to the defendant.
6. The plaintiff shall pay to the defendant as periodic alimony the sum of $6,000.00 per month until the death of either party or the defendant's remarriage.[2] Said alimony payments shall be non-deductible by the plaintiff and non-taxable to the defendant.
7. The plaintiff shall make a lump sum payment to the defendant of $50,000.00 to allow him to pay his litigation expenses and to furnish his condo unit.
8. All other assets or liabilities of the parties shall remain as currently owned.
9. All transfers and the lump sum payment shall be completed by January 31, 1995.
Counsel for the plaintiff is directed to prepare the judgment file and all other documents necessary to carry out the orders of the decree.
HARRIGAN, J.
SCHEDULE A
MASTER BEDROOM AREA
CGM desk and lamp — leather container
TV set
File cabinet
One desk chair covered in blue
Green wicker side table
White waste basket
Blanket
SUN PORCH — BAR
Hotchkiss picture CT Page 12395
Ice bucket
All liquor in house
LIBRARY
Waste basket
Coffee table
Picture — CGM and Lisi
KITCHEN
Electrolux
GUEST ROOM
Queen size bed and linens
Bedside tables
Electric blankets
ATTIC
Yellow wood framed settee