[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, 65, and the defendant, 68, stipulated that the validity and enforceability of a pre-nuptial agreement (Defendant's Exhibit B) would be litigated first, before the balance of the dissolution action is decided.
After the defendant made a formal proposal of marriage in January, 1992 he advised the plaintiff a pre-nuptial agreement was necessary. Each party then retained separate counsel both in New York and in Connecticut with whom each consulted privately and financial information was exchanged. The agreement was executed on May 14, 1992. The marriage took place on May 31, 1992 at Westport, Connecticut. The agreement provided that Connecticut law applied. The marriage was a subsequent one for each party, both having living children from previous marriages. The plaintiff has conceded that the procedural requirements surrounding the preparation and execution of their agreement were appropriately done.
The first claim of the plaintiff is that the provision for $25,000.00 to be paid to her for each twelve month period the parties lived together, measured from June 1 to May 31, as CT Page 5118-AAAAA husband and wife renders the agreement presently unconscionable. The short answer is that sum was freely bargained for and voluntarily accepted by the plaintiff. The court perceives a more serious flaw in that the defendant, by voluntarily separating, and without consideration of fault, may disrupt the formula.
A second claim by the plaintiff is that the defendant's behavior was the cause of the marriage breakdown and that she should not forfeit, not only the annual formula described above but also the prospective settlement made upon her as the defendant's widow, all as set out in paragraph 6, "Death of a Party; Ron's obligations.".
The court notes that the financial circumstances of each party has remained relatively static since the marriage.
The defendant had been diabetic prior to this marriage. He has been taking insulin daily for about eight years. Although the court heard a great deal of testimony on the parties' sexual incompatibility that developed in 1993 and early 1994, the defendant's impotency became untreatable in the summer of 1994. Intimacy between the parties ended at that time.
About this time the defendant began a relationship with Peggy Brenner, a woman he had known through playing tennis. On October 11, 1994 the defendant left the marital home, leaving a letter for the plaintiff wherein he stated his intention to seek further medical help in Switzerland. Instead, he sought the companionship of Ms. Brenner with whom he spent much of the ensuing winter. He would call the plaintiff periodically carrying out the charade that he was receiving medical treatment in Europe.
Nine weeks after October 11, the defendant returned to the marital home for a visit only, advising the plaintiff he needed time alone and would live in New York for awhile. On March 16, 1995 he again returned to the marital home to advise the plaintiff that he was living with Peggy Brenner. The plaintiff was devastated by the announcement.
The court has concluded that the defendant's behavior as described above was the cause of the marriage breakdown.
The plaintiff relies on McHugh v. McHugh, 181 Conn. 482. The general rule is that an antenuptial agreement will be upheld if it is fair between the parties and voluntarily entered into after CT Page 5118-BBBBB full financial disclosure and independent legal advice. It will not be enforced if the circumstances of the parties are so changed that to enforce its terms would work an injustice. That is not the case here.
However, any provision which provides for, facilitates or tends to induce a separation or divorce is contrary to public policy. It is against public policy to place a party in a position where that party would be forced to endure conduct by the other party or lose her contracted property rights and means of support if she began a dissolution action.
As to violation of state statutes or public policy, McHugh
distinguishes between the violation of statute and the informed and voluntary waiver of rights created by statute.
 "The former is prohibited while the latter is typically the object of such agreements." Id., p. 488.
But it may not provide an incentive for divorce.
 "Thus, a provision of an antenuptial agreement . . . creating a substantial economic advantage upon dissolution irrespective of fault . . . has been said to contravene public policy." Id., p. 489
The court finds that this agreement violates this quoted rule and is therefore unenforceable. To hold otherwise would allow the defendant to obtain substantial economic advantages from his causing the marriage breakdown.
This court holds that the parties agreement is unenforceable.
HARRIGAN, JUDGE.