[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The principle issue in this case is the enforceability of a separation agreement signed by the parties just a few months prior to the filing of this dissolution complaint in a ten year marriage. Although this case took ten trial days, the issues in this case are less complex.
After hearing the evidence and reviewing the exhibits, the court finds the following facts. The parties were married in Norwalk, Connecticut on September 17, 1988. There are no children, issue of the marriage, and no children had been born to the plaintiff since the date of this marriage. The defendant has continuously resided in the state of Connecticut more than one CT Page 13622 year next prior to the date of this complaint. Neither party has received any financial support from any governmental agency. Testimony reveals that the marriage of the parties has broken down irretrievably, and there is no hope of reconciliation.
The plaintiff wife is 39 and in good health. This is her first marriage. She is currently a Florida resident, is employed full-time in a legal career supporting herself. She received her law degree from the University of Miami. She was admitted to the Florida Bar in 1985, while living in Fort Lauderdale. She became a Public Defender in Miami and then worked as in-house counsel for Knight Enterprises, a real estate developer in Boca Raton. She became familiar with legal issues involving shopping centers, general building and construction. She has since become a member of the Connecticut Bar. She was employed as corporate counsel for Woolworth Corporation in New York City. She worked for the defendant as in-house counsel in Norwalk, Connecticut.
The parties met at a fishing tackle store in Florida in December, 1987. The defendant husband lived part-time in Florida on a 50 foot Bertram boat with a tuna tower while retaining his Connecticut residency. They started to see each other socially. The defendant would come to Florida virtually every weekend. The parties would meet at the West Palm Beach Airport and spend the weekend on his boat. The defendant brought the boat back to Connecticut in March, 1988, and the plaintiff then visited the defendant in Connecticut. They became engaged on February 14, 1988. Prior to their September, 1988 marriage, they talked about the defendant moving to Florida, but his business obligations prevented it. The plaintiff moved to Connecticut in June, 1988 and lived with the defendant in his East Norwalk, Connecticut condominium. She left her employment with the Boca Raton developer and became in-house counsel for the defendant's various businesses in Connecticut. She left Connecticut and became a Florida resident on December 1, 1995. She is employed in Florida as a corporate real estate attorney earning $110,000 annually.
During the period the plaintiff was defendant's in-house counsel, she also had her own law practice. The work she did for the defendant involved leases, negotiations with banks and creditors, and negotiating various commercial contracts. As a result, she became aware of each and every business that the defendant was involved in. In October, 1989 she became employed full-time as an attorney for Woolworth Corporation in New York. She worked as a Woolworth attorney until April, 1996. She then CT Page 13623 became a real estate attorney with Great Atlantic Pacific Tea Company for 6 months. She then left that job and returned to Florida where she currently resides. She still did part-time work as defendant's in-house counsel including the sale of residential subdivision lots, the buying out of his former partners and the reorganization of the partnership business, exchanging assets including real property, a major refinance of the Water Street, Norwalk property and the acquisition of a portion of that property by a family trust formed by the defendant. That family trust had been formed by a Bridgeport estate planning attorney with the plaintiff's advice, assistance and document modification skills.
The defendant husband is 52 and in good health. This is his second marriage. His first marriage lasted for twelve years and he has two sons from that marriage. He was divorced in 1981. The two boys lived with the defendant at the time of his second marriage. When the parties married, the plaintiff wife became an active step-mother, helping raise the two boys. The defendant's sons are now 22 and 24. They are both active in the defendant's current business.
The defendant had been working all his life. He served in the Navy for four years, until 1967 and completed high school in the Navy. He then became an apprentice laborer for one year and then an apprentice carpenter for five years, building houses and then later, commercial buildings. He became foreman of a company that manufactured doors and door frames in 1972. In 1973, the business recession caused his unemployment. He started his own business known as Modern Acoustics, which was the firm that he owned at the time of the parties' marriage.
Although his business entities have changed, he is still in the commercial interior construction business. He also is the property manager of 50 Water Street, Norwalk, Connecticut, which is a mixed use waterfront development in South Norwalk.
During the pendency of this matter, the defendant became the father of a two year old daughter by another woman. The court is of the opinion that the defendant's relationship with this other woman, the birth of this child and the defendant's willingness to father a child, was the cause of the plaintiff's efforts to disavow the separation agreement signed by the parties prior to the commencement of this dissolution lawsuit. The plaintiff testified, quite credibly, that her biological clock was ticking CT Page 13624 and that she and the defendant had agreed to have children. She had some conception problems and never did have children. To her consternation the defendant went ahead and fathered a child by another woman.
The parties spent an exhaustive amount of court time offering multiple detailed exhibits and brought boxes and boxes of documents to court every day. In a preliminary matter, this court heard a discovery dispute which involved 64 to 65 boxes of financial and other materials. Virtually every one of the 64 to 65 boxes was presented at trial and was the subject of intense examination by multiple witnesses.
The plaintiff filed the complaint on September 5, 1995. A simple request for dissolution was made by her then attorney who received a $1,000 retainer fee. The parties had already signed a separation agreement on June 20, 1995. No reference was made in the initial complaint of the June 20, 1995 Separation Agreement. A simple answer and a straight forward cross-complaint seeking a dissolution was filed by the defendant's counsel in September, 1995. The matter then waited disposition since the 90 day waiting period had not yet expired. No further pleadings were filed. The plaintiff discovered the birth of the defendant's minor child in February, 1996 and hired another attorney. The plaintiff for the first time, raised issues concerning the validity of the June 20, 1995 Separation Agreement with the defendant's attorney. The defendant thereafter filed an amended cross complaint on April 7, 1998 in three separate counts seeking: (1) A decree dissolving the marriage, (2) A determination by the court of the validity and enforceability of the June 20, 1995 Separation Agreement, and (3) An order of equitable estoppel preventing the plaintiff from disavowing the June 20, 1995 Separation Agreement. The plaintiff denied the allegations. The plaintiff filed a May 4, 1998 reply claiming that the June 20, 1995 Separation Agreement was not enforceable due to lack of financial disclosure, lack of counsel and unfairness at its execution and at the time of trial.
This case is controlled by McHugh v. McHugh, 181 Conn. 482 (1980).
 Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the CT Page 13625 time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work an injustice.
 McHugh v. McHugh, supra, 181 Conn. 485.
One of the reasons the plaintiff claims that the separation agreement is void is because the defendant failed to adequately disclose all of his financial information. The case of Wilkes v.Wilkes Superior Court, judicial district of Stamford/Norwalk, Docket No. FA95 0147168 (January 31, 1997, Harrigan J.) (1997 Ct. Sup. 448-Y) is strikingly similar to the present case. The Wilkes
case held that "independant" knowledge that the plaintiff had of the assets is sufficient to comply with the McHugh standards.Wilkes holds that full and complete disclosure by a financial affidavit is not necessary as long as the plaintiff had adequate and full notice of the defendant's assets from other sources. The court finds that on June 20, 1995 the plaintiff did have such "independent knowledge" of the amount, character and value of the defendant's assets. See Exhibits 67, 68, 69, 70 and 73. In February, 1995 the plaintiff reviewed the Water Street refinance binder in her possession. Exhibit 54.
The parties submitted, at the request of the court, a substantial number of cases on the issues of financial disclosure, "independant knowledge" and duress. The court has reviewed the cases and considered all of them in reaching its conclusions.[1] The plaintiff cites Tessitore v. Tessitore,31 Conn. App. 40 (1993) in support of her claim that the transfer by the defendant of the 50 Water Street property to a family trust can be set aside. The Tessitore case involved the transfer of a two-thirds interest in a party's residence to his parents in a dissolution case. It was claimed that this transaction was a fraudulent conveyance. Tessitore carved out an exception to the fraudulent conveyance requirements in a dissolution. "If the fraudulent conveyance claim is joined with a marriage dissolution action, as in the present case, the court is not concerned with whether the transfer renders the transferor insolvent or unable to meet his or her obligations. In such a situation, the issue is whether the conveyance removed property from the marital estate that would otherwise have been subject to claims of equitable distribution." Tessitore v. Tessitore, supra, 31 Conn. App. 42. The court does have the power to reverse a fraudulent conveyance. The plaintiff, though, does have the burden of proof to show such a fraudulent conveyance by clear and convincing evidence. Id., 43 CT Page 13626
The plaintiff is claiming under Tessitore that all of the defendant's former right, title and interest in and to the real property at 50 Water Street now in the name of his family trust, Wilmot Preservation Trust, be transferred to the plaintiff. In actuality, the plaintiff consented to this trust transfer, waived any right that she had to that trust in the June 20, 1995 agreement and was one of the attorneys involved in the preparation of the trust documents and the transfer of the real property to the trust. She can hardly claim that the defendant acted unfairly or fraudulently. The plaintiff has not proven a fraudulent transfer by clear and convincing evidence.
The plaintiff claims that the defendant breached the agreement from the beginning in nine ways in that the defendant: (1) failed to modify the August 31, 1995 marital house closing date, (2) failed to obtain the $600,000 mortgage, (3) did not decrease the house price, (4) prevented the showing of the house, (5) did not decrease the Hilton Head, South Carolina condominium price, (6) did not sign the Hilton Head sales contract, (7) did not cooperate with a joint tax return, (8) claimed improper mortgage deductions, and (9) did not maintain or repair the marital home. She argues that those breaches void the agreement pursuant to paragraph 2.2.
The defendant counters by stating in response to the above numbered claimed breaches: (1) the house was always on the market and as of trial had sold, (2) the plaintiff failed to cooperate in obtaining the mortgage, (3) the sales price was decreased, (4) the house was shown and was always listed for sale, (5) the Hilton Head condominium sold and the proceeds are still being held by the plaintiff's former attorney, (6) she refused to cooperate as to the tax returns, (7) she is the one who claimed improper tax deductions, and (8) the house was maintained as best as could be expected since the plaintiff contributed none of her $100,000 plus earnings to normal house maintenance and failed to pay her second mortgage obligation. In addition, the defendant argues that none of the nine claimed "breaches" go to the essence of the agreement and are not sufficient to void the agreement from the beginning.
After reviewing the testimony, judging the credibility and examining the records and photographs, the court concludes that the plaintiff has failed to sustain her burden of proof that the June 20, 1995 Separation Agreement is unenforceable pursuant to CT Page 13627 paragraph 2.2 due to the claimed breaches by the defendant. She failed to show that any of these claimed breaches went to the essence of the agreement.
The June 20, 1995 Separation Agreement was prepared using a format that had been used by Attorney William Fitzmaurice. He was the plaintiff's former dissolution attorney hired by the plaintiff in 1991. At that time a separation agreement had been negotiated and modified by their respective attorneys. Both attorneys were family law specialists. In June, 1995, the plaintiff chose to act as her own attorney. Both parties made numerous changes in the Separation Agreement prior to its June 20, 1995 execution. Both parties executed the agreement separately at their place of employment with the witnesses being staff members, she in New York at Woolworth Corporation. The negotiation of the June 20, 1995 Separation Agreement took a few months from the first draft until the final signed version. Self-prepared agreements without counsel are valid if the elements ofMcHugh are found. Murzyn v. Murzyn, Superior Court, judicial district of Tolland at Rockville, Docket No. FA89 43183 (December 5, 1990, Klaczak, J.), (1990 Ct. Sup. 4799).
Paragraph 16.5 required that the agreement be approved by counsel. The plaintiff had hired a family law specialist in June 1995 to commence a simple uncontested dissolution. There is no credible evidence that that attorney ever failed to approve the agreement. In fact, every inference can be drawn that the attorney did approve the June 20, 1995 Separation Agreement and accepted a $1,000 retainer to obtain a simple dissolution in which the June 20, 1995 agreement would be incorporated into the decree. This court cannot interpret paragraph 16.5 as giving the plaintiff, at any time, a unilateral right to disavow what the parties had represented in the agreement was a fair and complete resolution of their financial affairs. This conclusion is further buttressed by this court's independent conclusion that the agreement was fair and equitable based on the circumstances that existed on June 20, 1995. Furthermore, the failure of the plaintiff to timely invoke paragraph 16.5 along with her actions in commencing a simple dissolution proceeding, hiring a family law specialist as her attorney in that matter and not raising the validity of the agreement as a legal issue until a March 15, 1996 pleading, is evidence of a waiver by the plaintiff of the right to revoke the agreement. The court so finds a waiver. In addition, the plaintiff is asking that the agreement be voided, not modified. She never made any effort to modify pursuant to CT Page 13628 paragraph 16.5, and there was no request by an attorney for the plaintiff or the plaintiff herself requesting such a modification. See Exhibit 83. Paragraph 16.5 requires the attorney modification request to be in writing and no such evidence was offered at trial.
The plaintiff seeks in her Claims for Relief: (1) an order disavowing and voiding the June 20, 1995 Separation Agreement; (2) a conveyance to the plaintiff of all his right, title and interest into the Wilmot Preservation Trust and/or RCM Family Trust assets, in effect awarding to the plaintiff a six percent interest in the real property at 50 Water Street, Norwalk, the mixed use waterfront development property, (3) a sale of the marital home at 1380 Ponus Ridge Road, New Canaan, Connecticut, on which a contract of sale has been signed as of trial. The plaintiff proposes that the first mortgage, second mortgage, conveyance taxes and normal closing costs be paid and the remaining net proceeds be equitably distributed. The plaintiff has asked for no specific percentage.
The defendant seeks in his Claims for Relief: (1) a dissolution of the marriage, (2) incorporation by reference in the dissolution decree of the June 20, 1995 Separation Agreement in accordance with General Statutes § 46b-66, which among other terms waives alimony and divides the marital home, (3) an award of attorney fees for the extensive costs incurred by the defendant in defending this case when the matter was already settled with a competent executed separation agreement, (4) reimbursement by the plaintiff to the defendant for additional income taxes incurred by him as a result of the plaintiff improperly taking 100% of the home mortgage interest as a tax deduction in violation of Paragraph 6.1 of the June 20, 1995 agreement, (5) a division of the personal property in accordance with the separation agreement, and (6) an order that the 1996 tax deductions be equitably re-computed and the resulting cash paid by the plaintiff to the defendant.
This court finds that the June 20, 1995 Separation Agreement was validly entered into and does not violate any statute or public policy. The court further finds that the circumstances of the parties at the time of trial are not so beyond the contemplation of the parties on June 20, 1995 so as to cause the enforcement of the June 20, 1995 Separation Agreement to work an injustice. CT Page 13629
The court does not and will not go through a detailed recitation of each and every item of evidence that was offered by the parties in this case. Much of the evidence is irrelevant, since this court has found that the agreement is valid, was fairly negotiated and executed by the parties in accordance with the standards of the three conditions of McHugh v. McHugh, and the court's finding that the plaintiff had independent knowledge of the defendant's assets as of June 20, 1995. The court finds that the June 20, 1995 Separation Agreement is valid and enforceable.
The parties agreed that this court will hear the plaintiff's Motion for Contempt claiming that the defendant failed to pay the Prudential first mortgage and other house expenses in violation of the December 5, 1995 pendente lite order. The court after hearing the evidence finds that the December 5, 1995 pendente lite order was not modified. The court finds that the defendant failed to pay the Prudential monthly payments due November 1, 1997, December 1, 1997, and January 1, 1998. The same pendente lite order requires the plaintiff to pay the second mortgage. The court finds that she failed to make those payments. Although a defendant's defense of unclean hands as to the plaintiff can be strongly argued, the court will establish the arrears at three months and order that these three months be deducted from the defendant's share of the marital home sale proceeds to be redistributed in accordance with the June 20, 1995 Separation Agreement. The court does not find the defendant in contempt due to the plaintiff's unclean hands. This order will survive the decree and will not be stated in the order section of this decision.
The court, therefore, taking into consideration General Statutes § 46b-62, 46-81, and 46-82, O'Neill v. O'Neill,13 Conn. App. 300 (1980) and the June 20, 1995 Separation Agreement enters the following orders.
1. The marriage of the parties is dissolved.
2. The court finds under Connecticut General Statutes § 46b-66
and McHugh v. McHugh that the Separation Agreement dated June 20, 1995 is fair and equitable under all the circumstances, including the parties' current financial situation. The court also finds that the June 20, 1995 Separation Agreement is fair and equitable under all the circumstances that existed on June 20, 1995. The court finds CT Page 13630 that the parties' circumstances have not drastically changed since June 20, 1995. The court therefore orders that the original June 20, 1995 Separation Agreement be placed in the file and the court will incorporate by reference the terms and conditions of the June 20, 1995 Separation Agreement in this decree in accordance with General Statutes § 46b-66.
3. The court further finds that the plaintiff's actions in litigating this law suit cost the defendant substantial attorney's fees. This court, under the authority of Paragraph 6.1 of the June 20, 1995 Separation Agreement and General Statutes § 46b-62, orders the plaintiff to pay to the defendant the sum of $30,000 as attorney's fees.
4. Each party shall own, free and clear of any claim, demands or interest by the other, the rights and proceeds to any pending litigation brought in the name of said party. Each party shall; pay for all claims, demands, costs and attorney fees in connection with said litigation and hold the other party harmless therefrom. This order is consistent with the release provision of the June 20, 1995 Separation Agreement.
5. The court declines to enter any orders concerning the 1995 and 1996 income tax returns since that would only cause further litigation between the parties.
6. The court will retain continuing jurisdiction to divide their personal property not referred to in the June 20, 1995 Separation Agreement. All personal property as divided in accordance with the June 20, 1995 Separation Agreement is so ordered. The parties are requested to file the appropriate post judgment motions seeking specific orders relating to the division of personal property.
7. Each party will pay for and hold the other party harmless from the liabilities listed in their respective financial affidavits.
8. Each party will sign all documents and produce all information and documents necessary to put the orders of this court into full effect.
9. The plaintiff's attorney is to prepare the judgment file for approval and signature by the defendant's attorney. CT Page 13631
BY THE COURT
KEVIN TIERNEY, JUDGE