[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Based upon the testimony of the parties, the court finds that it has jurisdiction over this matter. The court also finds that there is one minor child issue of the marriage, Tomiko Gold, born March 22, 1983. There is another child of the marriage who has reached the age of majority. The parties were married on June 15, 1979, and the marriage has broken down irretrievably.
The Court has considered the provisions of Connecticut General Statutes Sections 46b-62, 46b-82 and 46b-81 with respect to the issues presented. The issues of custody and visitation have been resolved via agreement of the parties.
The testimony of the parties and exhibits submitted show that the wife is 47 years of age. She is currently employed at the Southern New England Telephone Company. The wife earned a graduate degree during the course of the marriage. At the present her gross salary is reported as $70,000.00 per annum. The exhibits submitted, in particular Defendant's Exhibit "E", suggest her income is slightly in excess of $81,500.00 per annum. In addition the wife has accumulated substantial assets as a result of her employment, including but not limited to shares of ATT Corporation, retirement savings accounts and IRA accounts which have a substantial total value. At the time of the marriage, the wife had no assets and brought in her words "$800.00 and an old car" into the marriage. However, during the marriage she has furthered her education, her employment, and has accumulated substantial assets.
The defendant Louis Gold is 49 years of age. He attended high CT Page 15983 school, then the University of Connecticut, however, he did not complete his studies. After leaving college, the defendant had a number of jobs. Eventually, in 1974 he became a police officer in the City of New Haven. That employment lasted until 1979 at which time he was terminated. That termination followed in lawsuit which eventually resulted in an award for the defendant of $25,000.00. When the defendant separated from the police department he began working as an investigator. He has pursued the same career since that time. He voices no displeasure from that choice nor is there any implication that his career would be any different had he not been married. His work is primarily related to the field of personal injury, and more than half of his income is from one client, an attorney's office. His gross salary has ranged from a high of $61,861.00 to a low of $51,158.00. He does deduct some expenses as business expenses, including his automobile, and part of the house as his only office located within the family residence.
At the time of the marriage the defendant was possessed of some assets. Since he had previously been divorced, he consulted with an attorney and had a pre-nuptial agreement prepared. That agreement was taken into evidence (Plaintiffs Exhibit "1"), and provides in relevant part that each party shall have the right to "manage, dispose, or otherwise deal with any property now separately owned or hereafter separately acquired" . . . In addition, the agreement provides that property acquired during the marriage with joint funds shall be divided on an equal basis. And finally, that either party will have the right to transfer or convey to the other party any property or interest as they may desire. Each counsel has argued as to the validity of said agreement.
It is clear from the evidence submitted at trial that the initial contribution to the marriage was much greater by the defendant than by the plaintiff in financial terms. At the time of the marriage, the defendant had an excess of $30,000.00 in savings, his pending lawsuit as previously mentioned, and he had an interest in a family home located at Foote Street in Hamden. The evidence indicates that most of those assets went into the family home.
The marriage of the parties lasted approximately 20 years. While each party recognized that difficulties had developed within the marriage, the parties did raise two children and until fairly recently, contributed in substantial part for the benefit CT Page 15984 of the family. The causes and fault for the breakdown of the marriage do not lie with any one party. The assets of the parties are clearly defined in the financial affidavits that have been submitted, with the exception of the plaintiffs SNET pension, which has a value of $12,257.00, and the evidence submitted as to the updated values of stock and retirement plans.
Of the assets jointly owned by the parties, the marital home located at 24 Idylwood Drive in Northford is the most valuable. After an examination of the appraisals submitted by each of the parties, the court finds that the appraisal stating the value of the property at $203,000.00 is the more reasonable of the two. There is a mortgage on that property in the approximate amount of $100,000.00.
A dissolution of the marriage is ordered. Based on the standards set out by our Supreme Court in the case of McHugh v.McHugh, 181 Conn. 482, 436 A.2d 8 (1980), and a review of the evidence, the Court finds that the Agreement entered into by the parties was valid and should be enforced. Accordingly, the court enters the following orders:
Pursuant to the stipulation of the parties, the parties are issued joint legal custody of the minor child, Tomiko Gold, with primary physical custody vested in the mother, Ingrid Gold, and liberal, reasonable, and flexible visitation to be vested in the father, Louis Gold.
The court finds that the child support guidelines are applicable to this matter. The defendant father, Louis Gold, is ordered to pay child support in the amount of $78.00 per week. The plaintiff mother, is ordered to maintain medical insurance for the benefit of the minor child as such is available through her employment at a reasonable cost. Uninsured and unreimbursed medical costs are to be paid in accordance with the child support guidelines submitted by the defendant in this action dated November 1, 1999.
The wife shall convey any and all interest that she may have in the marital home at 24 Idylwood Drive, Northford, Conn. to the husband. The husband shall be responsible for any and all debts and obligations of that property and shall hold the wife harmless and indemnify her from those debts and obligations.
The husband shall be entitled to retain ownership of the bank CT Page 15985 accounts listed in his financial affidavit. Similarly, he shall retain sole ownership of the life insurance policies in his name, his Fleet Bank IRA in the amount of $19,529.00, his pending lawsuit, his personal property, the furnishings of the house, and photography equipment. While there is no listing of the defendant husband's business as an asset, it is considered as such, and ordered the sole property of the defendant.
The wife shall retain as her own property the SNET Management Pension Plan Cash Balance Plan Account, which is not listed on her financial affidavit, but is referenced as an exhibit in Defendant's Exhibit "E" in the amount of $12,257.83. In addition, she shall retain as her sole property all of the bank accounts listed on he Financial Affidavit, the ATT Corp. shares as well as the Liberty Media shares, the life insurance in her name, the FC Co. IRA and the SBC Retirement Savings Account.
The defendant claims that he should have the Fleet Retirement Account listed on the plaintiffs Financial Affidavit because that account consists of funds originally owned by him but placed in the plaintiffs name to gain a tax advantage. That claim is rejected.
Neither party shall pay or receive alimony. Each party shall retain the motor vehicle listed theirs on their respective financial affidavits, and shall be responsible for the corresponding debt or lease. Each party shall be fully responsible for all of the debts listed on their financial affidavit and shall indemnify and hold the other harmless from those debts. The wife's maiden name of Pettigrew shall be restored to her.
The Zurich Kemper money market accounts held by the father and each of the minor children shall remain as presently designated and their use shall be limited to the post secondary and or college expenses of the respective minor child. Each party shall be responsible for their own counsel fees.
Antonio C. Robaina Judge of the Superior Court