[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 54, and the defendant wife, 46, whose birth name is Corelison, married on August 25, 1984 at Laguna Beach, California. No child has been born to the defendant since the marriage. The plaintiff has resided continuously in Connecticut for over one year prior to commencing this action for dissolution and other relief Therefore, this court has jurisdiction. Both parties acknowledge that their marriage has broken down irretrievably. [Stipulation III]
Prior to his military service the plaintiff had attended 3 V2 years of college but had not acquired a degree. The defendant is a college graduate, having received her B.A.degree from Humboldt State University located in California. [Stipulation Ill]
At the time the plaintiff married the defendant he owned and operated Grossman's Shoes, a family business located on Greenwich Avenue, Greenwich, CT. The store had been owned and operated by the plaintiff's parents since 1940. The plaintiff had been given the store on or about 1974 or 1975 when his father retired. [Stipulation I, paragraphs 17 and 18]
The defendant was managing another store on Greenwich Avenue when she met and then cohabited with the plaintiff beginning sometime in 1981.
The parties entered into an agreement on October 15, 1982 (plaintiffs's Exhibit #18) that purported to be a prenuptial agreement. Neither party has attempted to enforce its contents in this trial.
The parties entered into another agreement in August, 1984 (plaintiff's Exhibit #19) that provided for no waiver of the right to reasonable alimony in paragraph No. 1 and stated:
 "2. That all property, real, personal, or mixed owned at the time of this Agreement by each of the parties, CT Page 11882 together with all separate property which may be acquired by each party hereafter had any time prior to the contemplated marriage, is hereby declared to be the separate property of the party purchasing or otherwise coming into possession, ownership or control of said property. Each party expressly reserves to himself or herself the entire and complete administration and control of his or her separate property mentioned herein in Schedule A and B, movable and immovable, and the complete and free enjoyment, for his or her own separate use and benefit, of all fruits thereof, including, but not limited to, interest, dividends, profits, and rents, or from the result of labor, or otherwise, irrespective of the manner in which his or her separate property is preserved, managed or administered, subject to the right of reasonable alimony.
 3. Except as stated in Paragraph 1 above, each party hereby renounces any claim or right in and to any such property now owned or which may hereinafter be owned, possessed or controlled by the other party."
The agreement than recited the specific intention of the parties as follows;
 "5. It is the specific intention of the parties that neither party shall in any manner control, claim or exercise any right or interest whatsoever in the separate property of the other party, as set forth herein."
The parties have stipulated to many facts. One stipulation states that in or around July of 1984, the parties decided to get married and set a date of August 26, 1984 for their wedding. In view of the impending marriage, the plaintiff desired to protect his previously-owned assets in the event that things did not work out. Recognizing that the 1982 agreement was inadequate to accomplish this purpose, the plaintiff suggested to the defendant that they have a new prenuptial agreement drawn up. [Stipulation III] The defendant believed that the purpose of the 1982 premarital agreement was to separate her from the business. The defendant did not object to having a premarital agreement in 1984. The defendant was aware that the Grossman Shoes store was successful in 1982 and that business improved as time went by. The defendant and the plaintiff had discussions prior to the marriage in which he told her that the business was his family business and not her business and that it was CT Page 11883 separate from the two of them. The defendant recalls that the plaintiff disclosed to her immediately prior to signing the 1984 premarital agreement that he had the assets listed on the Financial Statement attached to the 1984 premarital agreement. The plaintiff is the sole stockholder of Grossman Shoes, Inc. and the shares were gifted to the plaintiff by his parents in 1975-1976. In 1979 the plaintiff's mother sold him the building at 88 Greenwich Avenue, Greenwich, CT for $225,000 and he paid for it with a ten-year purchase money mortgage of $225,000. The plaintiff received a $90,000 gift from his mother towards the purchase of a condominium in 1982 [Stipulation I, paragraphs 13, 14, 10, 12, 15, 18, 19, and 20]
The 1984 agreement contains nine WHEREAS paragraphs. The defendant points to the following one as limiting the entire agreement:
 "WHEREAS, the purpose and intent of this Agreement is to protect the business currently conducted by Lee Grossman, in the event of dissolution of the marriage".
Another WHEREAS clauses states:
 ". . . each of the parties have been advised by counsel, Lee Grossman by Shelby S. Larsen, Esq., of 1 16 Mason Street, Greenwich, Connecticut and Anina Marie Cornelison by John E. Meerbergen, Esq., of 37 Sherwood Place, Greenwich, Connecticut."
The defendant had the benefit of independent legal counsel and executed the agreement on Aug. 21, 1984 before her lawyer. The attorney testified he had no independent recollection of the substance of any meetings with the defendant. He further stated he did not know the plaintiff and he could not recall how he met the defendant nor could he remember how many meetings he had with her. (Plaintiff's Exhibit #20)
The defendant challenges the 1984 agreement on several grounds, citing McHugh vs. McHugh, 181 Connecticut 482, 436 A.2d 8 (1980).The general principles to be applied to determining whether such an agreement is enforceable are stated as follows:
"(1) the contract was validly entered into;
(2) its terms do not violate statute or public policy; and
 (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the CT Page 11884 contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice" [Citations omitted]
At p. 488 the court is first directed:
 ". . . . to ascertain whether the agreement complies with the ordinary principles of contract law and whether its terms and the circumstances surrounding its execution are such as to demonstrate that the parties were aware of their legal rights and their respective assets and liabilities, and proceeded by the agreement to alter those rights in a fair and voluntary manner."
The plaintiff and the defendant each had legal counsel of their own choosing and each conferred privately regarding the agreement now in question. The court finds that the financial disclosures appended to the agreement proper are adequate.
The court further finds that the wording of each of the numbered paragraphs is clear. The defendant urges the court to utilize the WHEREAS clauses quoted above as limiting language confining the agreement to the store only. A WHEREAS clause functions as an introduction. Corpus Juris Secundum, Volume 17 A, section 317 refers to such clauses as recitals being:
 . . . merely explanations of the circumstances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract . . . ".
If it is necessary to ascertain the parties' intention then such recitals may be read in conjunction with the operative portions of the contract. The court finds it unnecessary to employ the WHEREAS clauses in the parties' agreement in order to ascertain their intention for it is clear that each party was to retain the assets each brought to the marriage as their respective separate property. See Jones vs. City of Paducah,283 Ky. 628, 142 S.W.2d 365 (1940).
The court will consider the third condition, the circumstances of the parties at the time the marriage is dissolved after it makes further findings of fact. In 1981 the defendant came to Greenwich and opened a retail clothing store called the Plateau Designs. She managed and operated that store until she started working for Merona Sports in New York City as a merchandise manager for their children's division. The CT Page 11885 defendant moved in with the plaintiff in 1982. They lived together from October 1982 until they married. The defendant worked for Merona Sports for three years until the marriage. To the best of the defendant's recollection, she made $30,000 per year at Merona Sports. The plaintiff and defendant made a mutual decision in June 1984 that she leave Merona Sports and not be employed. The defendant handled her own finances from the time she left high school until she married the plaintiff [Stipulation I, paragraphs 4, 5, 3, 6, 7, 8 and 9] The defendant resumed employment in 1989 as a retail store manager for Joan David Shoes in New York City earning approximately $60,000 per year. After working there for approximately 2 1/2 years the parties made a mutual decision that she leave. [Stipulation I, paragraph 16]
After the marriage, the defendant was a homemaker who also engaged in leisure pursuits. On or about 1992 the plaintiff purchased a horse for $2000 for the defendant's use. Subsequently a second horse was purchased for $15,000 as a replacement. The defendant purchased a third horse for $10,000. The plaintiff paid for the boarding and maintenance of each horse in the monthly amount of $2000. The plaintiff paid for all of the household expenses during the marriage. The parties took several vacations and had what could be characterized as an affluent lifestyle. The plaintiff taught the defendant to scuba dive and he described their two trips annually to scuba dive, a total of 28 trips. The defendant accompanied the plaintiff on his buying trips, to conventions, fashion shows and similar business trips as his spouse. The defendant made several trips in 1996 through 1998 with the defendant to Italy for business-related purposes. The court does not find that the defendant has assisted the plaintiff in his business decisions which frequently involved judging shoe fashions.
The store has occupied the same premises throughout the marriage. The increase in gross receipts is attributed to the upgrading of the lines of shoes carried by the business. It is described as an evolution from a family shoe store to one carrying designer lines and ultimately couture products starting at $225 per pair, described by one witness as "top notch". The court accepts the plaintiff's testimony that he did not ask for advice of the defendant nor did he accept or act upon any volunteered comments made by the defendant regarding his business. The court has concluded that the defendant did not contribute to the continuing success of the plaintiff's business. The plaintiff testified his business has been very good in that receipts increased 15 percent in the fiscal year ending June 30, 1999.
In the Spring of 1996 the defendant decided to become a massage therapist. She enrolled in a school in Westport and attended courses for eighteen months graduating in December, 1997. The plaintiff paid for most CT Page 11886 of the schooling expenses. The defendant became licensed in New York and Connecticut by April, 1998. A customer was charged $65 per visit.
The court concludes from the evidence that the defendant displayed an earning capacity of $60,000 a decade ago. Today, as a manager of a store of similar size as the one she managed in New York City, a witness asserted the defendant could command a salary of $70,000 but the court, without proof that the defendant's skills are not stale, cannot give credence to that testimony. As the wife of the plaintiff she is entitled to continue to maintain a station in life similar to that which she enjoyed prior to the separation. The court concludes that the plaintiff has a far greater earning capacity and a greater ability to acquire assets in the future.
The plaintiff introduced the U.S. Dept. of Labor Bureau of Labor Statistics Consumer Price Index, All Urban Consumers — (CPI=U), Northeast urban, all items 1982 — 84 equals 100 to demonstrate that the index increased from the stated base to 178.4 as of April of this year (Plaintiff's Exhibit 33). To demonstrate how inflation impacted the assets listed by the plaintiff on the financial statement attached to the premarital agreement, the plaintiff introduced a chart listing $1,397,000 which was the total value assigned to his listed assets after deleting three automobiles (Plaintiff's Exhibit 34). The chart then applied the CPI-Ne percentage increase each year through 1999. The value of the same assets, impacted by inflation, totaled $2,426,270.99. The real estate at 88 Greenwich Avenue is listed on the 1984 premarital schedule as $600,000. The plaintiff's financial affidavit dated June 12, 2000 lists the same real estate as worth $1,975,000 although it is the same building located on the same plot of land. An appraisal performed by Neal S. Kaye Associates dated December 15, 1988 arrived at the same figure (Plaintiff's Exhibit 22). There is one apartment on the second and one on the third floor over the store. The appraisal concluded that the present use represented the highest and best use of the property, after noting that the improvements are in average condition and the neighborhood. . . ." has a value enhancing influence on the subject property." In 1984 the plaintiff listed a condominium unit known as 219 PalmerPoint, Greenwich for $220,000 which was his home at the time. Currently his home is located at 34 Sherwood Avenue, Greenwich valued on his current affidavit as $1,250,000 less a mortgage balance of $97,000. The business was valued on the 1984 premarital schedule as $500,000 and the value listed on his current affidavit is $565,000, the latter substantiated by an appraisal authorized by both attorneys (Plaintiff's Exhibit 23).
The defendant listed assets totaling less than $5000 on her 1984 premarital statement. Her current financial affidavit dated June 14, 2000 CT Page 11887 lists little in her name other than the Laguna Beach home. The court concludes that the defendant was totally dependent upon the plaintiff throughout the marriage.
The causes of the breakdown are found in the divergent interests of the parties. Although the plaintiff acknowledged an affair that occurred around 1991 the defendant does not claim this contributed to the breakdown. The evidence is clear that his misstep was not a cause of the final breakdown. The court does not find either party primarily responsible for the breakdown.
The court now returns to the third condition stated in McHugh. Having reviewed the evidence the court finds that the circumstances of the parties at this time are not so beyond the contemplation of the parties at the time the premarital agreement was entered into so as to cause its enforcement to work injustice. The store evolved over the years from being a family shoe store to being a "top-notch" couture establishment. The business has occupied the same space for many years. It has enjoyed continuing success since the plaintiff began to run it. The court has concluded that the premarital agreement is valid and it is enforced.
The parties' final separation occurred in August, 1998. Shortly thereafter the defendant moved to California where, on September 19, 1998 the defendant contracted to purchase a home in Laguna Beach for $485,000 (Plaintiff's Exhibit 26) and, with plaintiff paying the entire purchase price of $490,000, acquired title on October 5, 1998 (Plaintiff's Exhibits 27 and 28).
The plaintiff has established a massage therapy business in Laguna Beach and she testified that her business is growing but she must contend with local licensing rather than the statewide license approach described above for this state and New York. She acknowledges that she has no intention of returning to retail work. She expects to earn an annual income approaching $50,000 working at her new occupation.
Having reviewed the evidence in light of the relevant statutes and case law the court enters the following decree:
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown and each party is declared to be unmarried.
 2. The following assets are distributed to the plaintiff as his sole property in accord with the terms of the 1984 premarital agreement:
 Grossman Shoes, Inc.; 88 Greenwich Avenue, Greenwich CT.; 34 Sherwood Avenue, Greenwich, CT.; 1999 Porsche auto; Fidelity IRA; life insurance policies owned by plaintiff, Fidelity Investments bank account; and 50 percent of the Putnam Trust bank accounts.
 3. The plaintiff shall assume sole responsibility for the two debts listed on his financial affidavit and for the loan he arranged for the purchase of the Laguna Beach property.
 4. The plaintiff shall pay to the defendant as periodic alimony the monthly sum of $7500 in advance on the first day of each month hereafter for the, term of six years unless sooner terminated by the remarriage of the defendant, the death of either party or future court order. The term shall not be extended beyond six years in any event. The monthly amount is modifiable as provided by law.
 5. The defendant shall retain the Laguna Beach property as her asset free of any claim of the plaintiff
 6. The plaintiff shall pay to the defendant as an allowance to defend in order to defray her litigation expenses $37,145.50 as sworn to by her attorney on his affidavit dated June 26 2000 (Defendant's Exhibit C) within 60 days.
 7. The defendant's birth name Cornelison is ordered restored to her. Counsel for the plaintiff is directed to prepare the judgment file.
Counsel for the plaintiff is directed to prepare the judgment file.
Harrigan, J. CT Page 11888